Parker, J.
I am of opinion that the decree of the chancellor in this case is erroneous in directing a sale of the slaves conveyed by Bird to James, and the payment of the balance of the purchase money found duo by the commissioner, instead of dismissing the bill.
It is proved beyond all doubt, that the contracts sought to be rescinded were executed by Bird to hinder and delay, if not entirely to defraud his creditors. In a bill previously filed by him against James and others, and sworn to, but afterwards dismissed for the evident purpose of getting rid of his admissions, he states that being somewhat embarrassed by debts, and confiding in the assurances of James that a sale of his negroes and other property to him, to be returned when his difficulties were over, would be the means of saving the property from being seized by his creditors, and sold to great disadvantage, he had entered into the arrangements which he now asks the court to set aside. Even in the bill since filed, a very flimsy veil is thrown over the transaction, and it is easy to see through it what *512 was the real design of the parties, independent of the proofs, which are fall and conclusive. In the words of the chancellor, I think it impossible for anyone to read this record, without being satisfied “ that there has been fraU(j jn ap transactions between the plaintiff and ■James, that the plaintiff has fully participated in it, and that the whole of those sales were made by the plaintiff, in part at least, with the view of hindering and delaying, though most probably not of wholly evading the payment of his just debts.”'
If this be so, what pretence has he for asking the aid of a court of equity (especially when he has a clear legal remedy) either to rescind the contract, or to decree him his purchase money? There is no casein equity where any relief has been given to a fraudulent grantor of property, the conveyance being made to protect it against his creditors, except that of Austin's adm'x v. Winston's ex'x, 1 Hen. & Munf. 33. decided by a divided cdurt, and perhaps, under the circumstances, properly decided. The relief given in that case, as judge Green remarks in, Starke's ex'ors v. Littlepage, 4 Rand. 371. was founded upon the fact that the grantee, a creditor on a replevy bond, the debtor being in distressed circumstances, had availed himself of his power over him to induce the debtor to unite in the fraud, to avoid the impending danger. The majority of the court did not consider the debtor to have acted freely, and they found an apology for him in the distress and oppression of his circumstances, 'which neutralized and palliated his involuntary fraud, and rendered him either excusable or less guilty than the grantee. But in this case there are no circumstances of this kind in favour of the plaintiff He was not in the power of James, nor pressed by impending dangers, but perfectly free to act as he pleased. • He and James were in pari delicto, and neither of them entitled to come into equity; for there, he that has done iniquity shall not have equity; that is to say, *513 he shall not have the aid. of a court of equity when he is plaintiff, to any extent, but will be turned over to his legal remedy. So far is this principle carried in the case of Starke's ex’ors v. Littlepage, that if James had sued at law to recover the slaves included in the deed of the 8th of July 1814, Bird would not have been allowed to defeat the claim by proving the fraud ; and so too if Bird brings his action to recover the purchase money, to which there seems to be no impediment, the fraudulent grantee woutd not be permitted to impeach the transaction, and could set up no other than a strictly legal defence.
The decree of the circuit suporiour court was also erroneous in giving to Bird a lien upon the slaves in the hands of James; for the vendor of personal property has no implied or equitable lien for the purchase money, but must look alone to the personal responsibility of the vendee, as this court decided in the case of M’Neil v. Bird’s adm’r in July 1S35, in accordance with its previous decisions.
There is another point in the case, which in my opinion would justify this court in reversing the decree and dismissing the bill, although it is perhaps not necessary to decide it. The prayer of the bill is to rescind the contract, to have the slaves restored, and for general relief. Under the latter prayer, the chancellor thought he might relieve to the extent of decreeing to the complainant the balance of his pui'chase money. But I much question whether the case made by the bill authorized such a decree. Under the general prayer, the plaintiff is entitled to any relief which the material facts and circumstances put in issue by the bill will sustain ; hut it must be consistent with the case made, and if inconsistent with it, and with the specific relief prayed, will always he refused. Cooper’s Equity Pleading 14. Mitford’s Pleading 38. 39.3d american edi. and the cases there cited. Hiern v. Mill, 13 Ves. 119. and *514 the case of Soden v. Soden cited in that case. Johnson v. Johnson, 1 Munf. 549. and the authorities cited in the note. In this case the sale of the slaves and other property is repudiated. The bond for 8000 dollars is stated to have been given by James not as a consideration for the property conveyed, but to secure the vendor “ against accidents,” and that he “ might have something to shew.” All the facts charged by the bill, and the specific prayer, are inconsistent with the idea of a sale, or with a right to purchase money; and therefore to decree the latter, without an alternative prayer, or statement of facts justifying -it, seems to me to be opposed to the current of english authorities, and so far as the point has occurredj to our own. But as I am clear upon the first ground, it is, as I have already said, unnecessary to decide this question, and I wish to be considered as not deciding it.
The other judges concurring, decree reversed and bill dismissed.