GEORGE H. MYERS, APPELLANT, *v.* GEORGE H. KING AND OTHERS, RESPONDENTS.

*Right to rescind a contract as fraudulent — it cannot be exercised by a party who has affirmed it or disposed of property received by him under it.*

Upon the trial of this action, brought to rescind a contract made by the plaintiff with the defendant, providing for an exchange of the respective stocks of goods owned by them, upon the ground that the plaintiff was induced to make the contract by fraudulent representations made by the defendant as to his financial condition, it appeared that the plaintiff, after knowledge of the fraud, had recognized by his acts the existence of the contract, and so dealt with the property received by him as to make its restoration impossible without an accounting.
*Held,* that a judgment dismissing the complaint should be affirmed.

APPEAL from a judgment, entered in Ontario county on the report of a referee dismissing the complaint on the merits.

The plaintiff, on October 5, 1886, made a contract with the defendant George H. King, by which he agreed to exchange his stock of goods, designated as the ninety-nine cent store, for King's stock of drugs, etc., of all which inventories, with valuation, were to be made, and within sixty days thereafter the difference in value was to be paid by the party chargeable by the inventories so made, but they should at once take possession, keep an account of sales, the amount of which, at cost prices, should go into the inventories. Pursuant to the contract they, on the day of its execution, respectively, took possession of the goods so exchanged, and soon after selected persons to make the inventories, who proceeded to make them. The inventory of the drug store was completed October twenty-sixth, and that of the other November 3, 1886. The plaintiff was deputy sheriff, and on October eighth, three days after the exchange, he received an execution of about $1,800 against the property of King, issued upon a judgment in favor of the defendant Jones against him, and levied it upon the goods of the ninety-nine cent store, in possession of the judgment-debtor, and took from the latter a chattel mortgage for $2,000 on the goods to secure the payment of any difference which might be found by the inventories to be due him upon the contract between them; and afterwards, learning that there were two mortgages which had been made by King, upon the stock of drugs, he, on October twentieth, took from him and his wife another mortgage on the stock of the ninety-nine cent store for $200 to indemnify him against the lien of those mortgages. At that time one, and within three days after, two other executions against the property of King came to the plaintiff, as such deputy sheriff, amounting to nearly $500. Before this, and on October eighteenth, King had made a bill of sale of the ninety-nine cent store stock to his wife, the defendant Lizzie T. King, and before the commencement of this action the defendant Jones had assigned her judgment to the defendant Babcock. On October twenty-fourth the plaintiff was directed by the attorney of record in the Jones judgment to advertise the goods for sale upon the execution, which he did, and handed the execution over to the sheriff, Wheeler, and shortly after commenced this action. By his complaint he alleges

fraud on the part of King, and demands relief that the difference in the valuation of the two stocks be paid him; that its amount be the first lien upon the ninety-nine cent store stock, and that, if necessary, the contract of October 5, 1886, be adjudged void, the property be returned to the original owners, and that an account be taken of so much of the goods as has been disposed of. Then follows a general prayer for relief. At the time of the commencement of the action the inventories were not completed. They resulted in making the drug-store stock amount to $3,318.60, and that of the other store to $6,038.01, making the difference, $2,719.41 due the plaintiff.

*D. B. Backenstose*, for the appellant.

*Edwin Hicks*, for the respondents King and Wheeler.

*Daniel L. Hurlbut*, for the respondents Jones and Babcock.

BRADLEY, J.:

By this action the plaintiff seeks equitable relief from the consequences of the contract made by him with the defendant King, on October 5, 1886, on the ground that he was induced by the fraud of the latter to enter into it. The alleged fraud consisted of the false statement made by King that he was perfectly good for any difference there might be due the plaintiff in the value of the two stocks of goods exchanged. The referee has found that the charge of fraud is supported by the evidence, and his conclusion was warranted in that respect by it. And upon the fact so found the plaintiff was entitled to relief through rescission of the contract if the parties could be placed in *statu quo*, unless deprived of the right by his laches or ratification. The contract was voidable merely. And the right to rescind it furnished by the fraud depended upon reasonable promptness in that direction on his part after its discovery, and may have been done by tender of complete restoration, and if necessary he might thereupon nave maintained an action at law to recover the goods, or he may by action in equity for rescission, offering to make restoration, have obtained relief to that effect. But if, after knowledge of the fraud, a party so situated proceeds in recognition or affirmance of his contract, he, as a general rule, is deemed to have ratified it, and is denied such remedy or relief, and his right of action resting in the fraud for its support is only for

damages occasioned by it. (*Schiffer* v. *Dietz*, 83 N. Y., 300; *Cobb* v. *Hatfield*, 46 id., 533; *Baird* v. *Mayor*, etc., 96 id., 567; *Strong* v. *Strong*, 102 id., 69.) When the plaintiff, three days after the contract was made, received as deputy sheriff the execution of nearly $1,800 against King, he obtained some information of his pecuniarily embarrassed condition. And he alleges in his complaint that this was the first knowledge or intimation he had of the fraud and imposition that had been practiced upon him. This was undoubtedly true, as he had before had no information of this existing liability of the defendant King, which was put into judgment the day the contract was made, and it appears the right to do so had before been given by King's stipulation. The plaintiff, then, instead of availing himself of the right to rescind the contract of sale, as he may have done, levied the execution upon the property he had transferred to King, charged him with misrepresentation, and took from him a mortgage upon the same property to secure the payment of any difference in value of the exchanged properties that might be found due him upon the contract. But he was then informed by King that the matter was all fixed and he would attend to it immediately. While this did not change the fact of the liability of King for the amount of the judgment, it may have led the plaintiff to suppose that it would be so arranged as to relieve him from the embarrassment of the levy. It was not, however, so done, but the judgment and levy remained, and ten days after this King made sale of his interest in the property to his wife, and two days after that the plaintiff, having learned of the existence of two mortgages which King had, prior to the contract, put upon the stock of drugs, took from him and his wife another mortgage on the goods so held by the wife, to indemnify him against the effect of those two mortgages. He then knew that the levy still remained effectual, and that at least one other execution for a small amount had been issued against the property of King. Yet the plaintiff had hopes that a then pending negotiation might result in an arrangement for securing in part the payment of the Jones judgment, so as to partially relieve the property from the levy of the execution. And he took no step otherwise than in affirmance of his contract with King until he ascertained, on the twenty-third and twenty-fourth of October, that the arrangement would not be made

and that the property must be advertised for sale upon the execution. It was then quite apparent that the property at a forced sale might not bring very much in excess of the amount of the execution, and that the plaintiff would have only the personal responsibility of King for the amount of any difference, or most of it, that might be due him under the contract. Then, for the first he sought for a remedy to relieve himself for his protection from the sale he had made, by either making his claim the first lien on the property, or through a rescission of the contract. The plaintiff was in no situation to assert a lien upon the property for the amount of the difference due him as purchase-money. No such consequence results from the sale of personal property where it is unqualifiedly delivered pursuant to agreement to sell. The remedy in such case for the purchase-money is only in the personal responsibility of the purchaser. (*Lupin* v. *Marie*, 6 Wend., 77; *James* v. *Bird*, 8 Leigh, 510; 31 Am. Dec., 668.) It is suggested that as this action is not founded upon a rescission of the contract, but is an action to rescind it, nothing preliminarily to it is requisite to be done by the plaintiff for the purposes of relief. It may be assumed that in such case it is only necessary to offer by the complaint to restore to the defendant what has been received from him, but ability to make restoration is essential for the purposes of equitable relief as well as for remedy at law founded upon rescission. And the same principle, makes ratification or affirmance applicable as a defense, in the one case as in the other. (*Sinclair* v. *Neill*, 1 Hun, 80; *Bedell* v. *Bedell*, 3 id., 580.) The question of affirmance depends upon circumstances. The party cannot be deemed to ratify until he has knowledge of the fraud. He is not required to suspect and seek for it, nor is suspicion to take the place of knowledge. And what delay will constitute laches or furnish evidence of affirmance or have a bearing upon it by way of defense is dependent upon the circumstances. In equitable actions for such relief, the principles relating to it are somewhat broader in their application and as applied, and more elastic than in actions at law resting on alleged prior rescission.

It is contended that the information which the plaintiff had received did not result in knowledge of the fraud, until the failure was reached, to consummate the arrangement to partially secure the

payment of the judgment and thus relieve the property to that extent from the levy of the execution, which resulted in the direction to advertise the property for sale on that process. This final situation was productive of no additional facts, and of none which had not before then come to the knowledge of the plaintiff bearing upon the pecuniary responsibility of King, but the plaintiff, in reliance upon his promises and statements, may have had until then the expectation that his claim for the amount of the difference in values of the two properties would have protection and could be realized from the property, and therefore he had continued to recognize the force of the contract, and had proceeded in affirmance of it. In the meantime he was selling from the stock of drugs which he had received from King, and impairing it as a means of security for the execution of the creditor Jones, while if he had at once, on learning of the execution, rescinded the sale, such creditor could have taken the benefit of a levy upon that stock of goods substantially unreduced by sales after the plaintiff took possession of it. But instead of that the plaintiff, as such deputy sheriff, on receiving the execution, treated the sale by him to King as effectual, and levied the execution upon the property so sold to the latter. The creditor could not treat it otherwise than the plaintiff had represented it by the levy made by him, and after the expiration of sixty days from the time of its receipt by the sheriff the execution could not be made effectual as a levy upon the stock of drugs. (*Hathaway* v. *Howell*, 54 N. Y., 97; *Walker* v. *Henry*, 85 id., 130.) While the levy of an execution upon property does not afford any right in the nature of that of a *bona fide* purchaser or lienor, as against the equities of another, the circumstances attending and following the levy made by the plaintiff of the execution, are entitled to some consideration upon the plaintiff's application for equitable relief, in view of the situation in which the creditor has been placed by him, and of the prejudice which might result to such creditor by divesting the execution of the lien which the plaintiff gave to it by the levy. This levy was, in practical effect, a representation of the plaintiff, that so far as he was then advised, King had a leviable interest in the property, and it does not appear that the creditor was in any manner informed that any claim was or would be asserted to the contrary until the time of the commencement of this

action. And the conclusion was permitted that it was instituted not by the development of new facts before then unknown, but because it was apprehended that his security upon the property was not effectual for the payment of the amount which he might be entitled to receive from King under the contract, and that he had so acted and proceeded in affirmance of the contract as to have ratified it after knowledge of the fraud complained of, and for that reason was denied the right to repudiate the sale. The referee having so found the fact, we think it was supported by the evidence and see no occasion to disturb it. But there is another difficulty in the way of the plaintiff's recovery. He did not cease to hold and deal with the stock of drugs apparently as owner at the time of the commencement of this action, but continued to sell the goods, as before, up to the time of the trial, and for the purposes of his trade he continued to intermingle with them other goods by way of keeping up his supply of the stock, so that his ability to make restoration of the property he received from King was substantially defeated. As a general rule, a partial rescission will not be adjudged, but must be entire and complete to support the remedy. (*Sinclair* v. *Neill*, 1 Hun, 80.) This rule, however, has its qualifications. And when by the act of the defrauding party, the situation is such as not to permit complete reciprocal restoration in kind, the innocent party may be given protection by restoring the equivalent of what he received, or by doing that which may, so far as can be done, place the parties in the condition they were before the transaction sought to be rescinded was had. (*Masson* v. *Bovet*, 1 Denio, 69; *Pearse* v. *Pettis*, 47 Barb., 276; *Bradley* v. *Bosley*, 1 Barb. Ch., 125.) And a court of equity may, by its judgment, grant rescission and adjust the rights of the parties in cases of that character. But the plaintiff did not tender restoration, nor did he, by his complaint, offer to restore what he had received so far as he could, and account for the residue. He therefore presented no opportunity to the defendants to accept rescission of the contract. And by his prayer for relief sought that result in the event only, that it should be necessary, and in that case asked that an accounting be had for its consummation. And instead of preserving the situation as it then was, and his ability, so far as it then existed, to restore the property received, the plaintiff proceeds to sell the property and further renders restoration imprac-

ticable. To extend the rule applicable to such cases, so as to enable a party voluntarily with knowledge of the facts upon which he relies for rescission, to so deal with property as to require restoration through an accounting instead of a return of the property itself, would be unwarranted in principle and unfortunate as a precedent. The theory upon which rescission rests is that the moving party has elected to treat the contract as void, and that no title or rights are derived from it by either party. And he must, in support of his remedy, act consistently with that view of the situation. The plaintiff has not so done. And the conclusion of the referee seems to have been supported by the facts found and proved.

The judgment should, therefore, be affirmed.

BARKER, P. J., HAIGHT and DWIGHT, JJ., concurred.

Judgment affirmed, with costs.