# Wytheville

CHARLES C. DOBIE V. SEARS, ROEBUCK AND COMPANY.

June 13, 1935.

Present, All the Justices.

The opinion states the case.

*Albert V. Bryan* and *John Barton Phillips,* for the plaintiff in error.

*Gardner L. Boothe* and *Walter N. Tobriner,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Charles C. Dobie filed a bill in chancery, praying that a building contract executed by him and appellee be rescinded, on the ground of failure to erect a dwelling house in accordance with the plans and specifications. The answer filed denied the material allegations of the bill. Evidence was taken *ore tenus,* after which the chancellor made an inspection of the premises, and "being of the opinion that the rescission of the contract is not justified at this time but that certain things should be done by the defendant," entered a decree on November 30, 1932, ordering appellee to make eight specific corrections in the building and report to court. To the entry of this decree appellant excepted.

After considerable delay, appellee reported the work done in accordance with the decree, to which report appellant filed exceptions. Evidence was introduced by both parties in support of the report and the objections. The chancellor finally determined that appellant was not entitled to rescission of the contract, but that he was entitled to $1,700 damages, for failure to erect the dwelling in accordance with the contract and for delay in the completion of the work, and on December 19, 1933, entered decree accordingly. From both decrees appellant sought and obtained this appeal.

The first error assigned is to the action of the court in refusing to rescind the contract.

The record discloses that appellant, a young man employed in Washington, District of Columbia, was engaged to marry a Miss Jean, and the date of the wedding was set

for February, 1932. For the purpose of having a home in readiness for his bride, he, in the summer of 1931, entered into negotiations with appellee to erect a dwelling house on a lot which he owned in the city of Alexandria, and paid appellee $50 to draft the plans and specifications for such a house as he desired. After studying the plans, he and his fiancee determined to make certain changes, which were submitted to and accepted by appellee. One of the changes in plan was the substitution of an open stairway for a closed or disappearing stairway leading to the second floor. Appellee stated that to make an attractive open stairway it would be necessary to enlarge the building from one to two feet, and for this change the additional cost would be approximately $1,000. This substitution in the plans was approved by all parties, and thereupon appellant paid appellee $1,450, less the $50 he had previously paid for the plans and specifications, and executed his notes for $9,600, payable in monthly installments, beginning January 15, 1932. The payment of this sum was secured by two deeds of trust on the lot and the proposed building. In these deeds of trust, it was stipulated that the owner should not sell or dispose of the property until the debt to appellee had been fully discharged.

Appellant contended that the house was not erected in accordance with the contract, and after the failure of the parties to reach a settlement the bill for rescission and cancellation was filed in February, 1932. The trial court, by its decree entered on November 30, 1932, found as a fact, on conflicting evidence, that the building failed to conform to the plans and specifications in eight particulars: (1) The cellar was not water proof; (2) the brick work on the whole building failed to have one-fourth inch white, stainless cement joints, the color of the cement joints was not uniform, and the brick window sills were not properly laid; (3) the carpenter's work around the dormer windows was defective; (4) the electric wiring of the house was not in accordance with the specifications; (5) the door frames in the cellar did not fit; (6) the openings in the plaster around

the electric fixtures were too large; (7) the basement ceiling was not properly finished; (8) some of the slate on the roof was defective.

On these findings of fact, and evidence tending to prove other substantial deviations from the plans, on which the trial court did not express its conclusions except to assess $1,700 damages against appellee, appellant contends he is entitled to rescission of the building contract.

A suit for rescission is the counterpart of a suit for specific performance. Both are addressed to the sound discretion of the court, and in neither will relief be granted to one who has been guilty of inexcusable delay in asserting the right. *Hagan* v. *Taylor,* 110 Va. 9, 65 S. E. 487. An application to rescind a contract should be made with due diligence. What constitutes diligence must be determined from the facts of the particular case. It must be in proportion to the injury likely to ensue from delay. *Simmons* v. *Palmer,* 93 Va. 389, 25 S. E. 6. If after discovery or knowledge of facts which would entitle a party to rescind, he treats the contract as a subsisting obligation and leads the other party to believe that the contract is still in effect, he will have waived his right to rescind. Prompt action is essential when one believes himself entitled to such relief. *Max Meadows Land and Imp. Co.* v. *Brady,* 92 Va. 71, 22 S. E. 845; *Campbell* v. *Eastern Building and Loan Association,* 98 Va. 729, 37 S. E. 350; *Finch* v. *Garrett,* 109 Va. 114, 115, 63 S. E. 417; *Barnett* v. *Barnett,* 83 Va. 504, 2 S. E. 733.

Applying these well established principles to the pertinent facts, the evidence clearly shows that shortly after the date of the contract, September 3, 1931, appellee commenced work on the building; that three or four times a week, sometimes oftener, appellant was on the premises, that he talked with the workmen and made numerous suggestions about the materials used; that he was in close contact with Mr. Nash, the salesman who had induced him to make the contract; and from time to time he registered various complaints; that Miss Jean, his fiancee, and other friends were

frequently on the premises and made suggestions to appellant on the subject.

The first written objection was made on November 27, 1931. In this letter he expressed his high opinion of appellee and stated that his complaint was based on the indifference and carelessness of some of the workmen engaged on the building, and asked that a man be sent down to correct some of the defects. Among other things, he said: "Undoubtedly much work and expense can be saved for you and by such an agreement I will surely derive more satisfaction, than by having things done wrongly and corrected later, which, of course, I shall insist upon."

Soon after this letter was written, a representative of the company appeared, and on December 13, 1931, this representative, with the supervisor in charge of the construction, appellant, his fiancee, and several of his friends, went over the building together and a memorandum was made of the various objections raised. On this occasion several changes were suggested by appellant and his fiancee and the locations of several radiators were changed from the places designated in the original plans.

On this date the brick work and the plastering had been completed, except for finishing touches. It was therefore apparent that a closed stairway had been substituted for an open stairway, and even if appellee is mistaken in its contention that appellant had authorized the change, it was the duty of appellant, if he was going to insist upon an open stairway, to have then and there so informed appellee. This he did not do.

The day after this conference, appellant wrote to appellee at its Chicago office and mentioned several things that occurred on the previous day, raised objection to the representative, Mr. Hawksworth, who had made the inspection for appellee, and called attention to the fact that he expected the house to be completed by January 15th.

On December 29th Mr. Hawksworth wrote to appellant stating that he had undertaken to make nine specific corrections of defects listed by Mr. Dobie, and said that in all

probability the house would be ready for delivery by the 15th of January.

On December 31st, appellant wrote to appellee at its Chicago office, taking up in detail the nine items mentioned in Mr. Hawksworth's letter, stating that three of the corrections had been properly made, raising some questions about the other six, and again objecting to Mr. Hawksworth's attitude and manner, and referring further correspondence to his attorney.

About the middle of January, appellee sent its representative, Mr. McCarthy, to see appellant and by appointment the parties met on the premises. Mr. McCarthy attempted to get a detailed statement of each and every objection which appellant had to the building. The meeting adjourned to the office of Mr. Phillips, attorney for appellant, and again Mr. McCarthy endeavored to get Mr. Dobie to specify his complaints and permit appellee to remedy any defects. At the conclusion of the conference, appellant stated that he would advise appellee by letter as to his final decision, and on January 25, 1932, he wrote appellee the following letter:

"I regret to advise you that the several very pleasant conferences recently had with your Mr. McCarthy in Alexandria, Virginia, concerning the house which you have built for me at that place, have in no manner altered my feelings or attitude in this matter.

"It is obviously quite unnecessary to enumerate at this time the faults of which I complain, since they have been freely and frequently discussed with various persons connected with your company, as well as only recently with Mr. McCarthy.

"As matters stand, I see but two possible solutions, as far as I am concerned, and these are, to-wit:

"First: That your company adequately reimburse me, and in turn take full title to the property.

"Second: That your company correct all correctible faults, and reduce the amount of the loan sufficiently to

afford me the possible opportunity of selling the property without loss to me in the transaction.

"Assurance is given that this proposition is offered in full faith, and it is trusted that the same will not be considered a hasty conclusion on my part, and is made only because it is honestly and conscientiously believed that the equities in this controversy are on my side.

"I shall be pleased to have your reaction to this communication at an early date."

Appellee replied to this letter under date of January 28th, declining to take title to the property and stating that in order to satisfy appellant it would undertake to do over a certain part of the structure, declined to reduce the contract price, and closed by suggesting that they submit the matter to arbitrators. Finally, on February 8th, appellant's attorney notified appellee that the house would not be accepted, and shortly thereafter this suit was instituted.

The evidence clearly shows that after discovery of the defects now alleged, appellant did not promptly exercise his right of rescission, but made suggestions as to changes in the structure from the plans and specifications, which appellee, apparently in good faith, attempted to carry out, believing at the time, and having cause to believe, that appellant regarded the contract as binding between the parties; that after the defects, most of which were obvious, were known to appellant, he treated the contract as still in force, and permitted appellee to continue the construction until the building was practically completed before announcing his intention to rescind.

Even if it were possible to restore the *status quo* of the parties, appellant has never given appellee permission to remove the building from the lot. The proposition set forth in the bill is that appellee be compelled to repay appellant the $1,450 paid on the contract, plus the amount paid as purchase price for the lot, or that the property be sold and appellant be paid these sums from the proceeds of sale. Since the institution of this suit, appellant has married, his wife is not a party, and if the court should enter either

decree requested by appellant serious question would arise as to the title, on account of the inchoate right of dower in the wife. A court of equity is always reluctant to rescind unless the parties can be put *in statu quo*. If this cannot be done, it will give relief only where the clearest and strongest equity imperatively demands it. *Stearns* v. *Beckham,* 31 Gratt (72 Va.) 379. While we are of opinion that under the circumstances disclosed, appellant has waived the right to rescind, the record does not disclose a waiver of the right to claim damages for the breach of the building contract. See *Cawley* v. *Weiner,* 236 N. Y. 357, 140 N. E. 724.

The second assignment of error is stated thus: "The court erred, upon refusing the appellant rescission and cancellation of said contract, in not dismissing appellant's bill, without prejudice to his right of action at law for damages, instead of directing the appellee to correct the defects and deviations and awarding damages to the complainant."

The prayer of the bill is as follows: " * * * that the defendant be enjoined from negotiating the said negotiable notes; that the said contract be adjudged cancelled and rescinded; that the said notes be cancelled and made void; that title to said premises be decreed in favor of the defendant upon the defendant paying to the complainant the amount complainant paid for said land, the cash payment made to the defendant, or in the alternative that the property be sold and the complainant reimbursed for his investment therein, and all damages occasioned by the failure of defendant to perform its contract, and all costs of this proceedings."

There was no general prayer for relief. When the court refused on November 30, 1930, to grant either of the prayers set forth above, appellant had the right to move that the decree be made final so that he might appeal therefrom, or to amend the bill and ask that appellee be enjoined from negotiating his notes, and for an issue out of chancery to ascertain the amount of unliquidated damages, the sum so ascertained to be applied as a credit on the notes, or to ask for a dismissal of the cause and institute an action

at law. He elected to do the latter, and inasmuch as appellee requested no affirmative relief, the court erred in retaining the case on the docket and attempting to give both specific performance and unliquidated damages. This decree was not consistent with any phase of relief sought by either party, and was inconsistent with the issues made by the pleadings. Of course, equity having acquired jurisdiction for one purpose may retain it for all purposes to do complete justice between the parties and determine their rights in the controversy, even though legal rights are involved which otherwise could be enforced only in a court of law. See *Woolfolk* v. *Graves,* 113 Va. 182, 69 S. E. 1039, 73 S. E. 721; *Phillips* v. *Wells,* 147 Va. 1030, 133 S. E. 581.

█ A party seeking equitable relief is entitled to any relief which the material facts and circumstances put in issue by the bill may sustain, but such relief must be consistent with the pleadings and the prayer. See *James* v. *Bird's Adm'r,* 8 Leigh (35 Va.) 510, 31 Am. Dec. 668.

In *Hurt* v. *Jones,* 75 Va. 341, relief was requested which was not included within the bill or the prayer. Judge Burks, in disposing of the case, said: "Extending to the appellees all the indulgence which the most liberal rules of practice at this day would warrant, it is impossible, without a total disregard of the plainest and most essential principles of pleading, to grant them the special relief now prayed at the bar, but not in the bill, even if we thought them entitled to it in a proper case, as to which we express no opinion.

\* \* \* \* \* \* \* \*

"In *Hiern* v. *Mill,* 13 Ves. R. 114 (cited in 1 Dan. Ch. Prac. 380), Lord Eldon said: 'The rule is, that if the bill contains charges, putting facts in issue that are material, the plaintiff is entitled to the relief *which those facts will sustain,* under the general prayer; but he cannot desert the specific relief prayed, and under the general prayer ask specific relief of another description, *unless the facts and circumstances charged by the bill* will, consistently with the rules of the court, maintain that relief.'

"The test of the relief to be granted is not the *case proved, but the case stated in the bill upon which the issue is made up."*

For the foregoing reasons it was error for the court to refuse appellant the right to prove damages as of November 30, 1932, either in a court of law or on an issue out of chancery. However, by his failure to ask that the first decree be made final so that he could appeal therefrom, appellant lost his right to have the value of the building assessed as of that date. That is, he must take the building with its value enhanced, if it is enhanced, by the additional work or improvements placed thereon by order of the court.

In December, 1933, when the cause came up for final hearing, the trial court found that upon the evidence introduced appellant was entitled to recover damages, but there was no evidence which tends to prove the amount of damages. The court, after a personal inspection of the building, gave $1,700 in damages, but even when a jury assesses damages after a view, their verdict upon the amount of damages should not be based upon the view alone.

At the time for the final hearing the appellant had the right to renew his motions for a dismissal of the cause and institute an action at law for the unliquidated damages as of that date, or the right to amend his bill and ask that appellee be enjoined from negotiating his notes, or for an issue out of chancery to ascertain the amount of such unliquidated damages, the sum so ascertained to be applied as a credit on the notes.

This latter right is based upon the power of equity, after it has acquired jurisdiction of a case for one purpose, to retain it for all purposes. In the exercise of this power, equity can and does give damages in proper cases. The appellant had prayed that the transfer of the notes be enjoined, and the court found that the appellant was entitled to damages arising from a breach of the contract for which the notes were given. In a suit by the appellee on the notes the appellant would have been entitled to set off the damages sustained by such breach of contract. Against a

*bona fide* holder of such notes without notice of the appellant's claim for damages, this set-off would not be permitted.

In order to preserve this set-off and to avoid a multitude of suits, the court had jurisdiction to enjoin the transfer of the notes, and having jurisdiction on this well recognized ground, it could go further and have the damages for breach of the contract assessed by an issue out of chancery, and by mandatory injunction decree that the amount of such damages be entered as a credit payment upon the notes.

In Pomeroy on Equity, section 236, after discussing the instances in which a court of equity may relieve against unjust judgments at law by injunction and then proceed to settle the entire controversy, the author says: "In fact the rule is more general still in its operation, and extends to all suits brought to obtain the special relief of injunction, and is not confined to suits for the purpose of enjoining actions or judgments at law. It may be stated as a general proposition that, wherever the court of equity has jurisdiction to grant the remedy of injunction for some special purpose, even though the injunction covers only a portion of the controversy, it may go on and decide all the issues, and make a final decree granting full relief."

This principle is illustrated by the case of *Pack* v. *Whitaker*, 110 Va. 122, 65 S. E. 496, 497, in which the vendee of a tract of land who had given notes for the deferred purchase price sued the vendor to enjoin collection of the last installment, due to a deficiency in the acreage. The court said: "Equity having assumed jurisdiction for injunctive relief and to compel the vendors to make compensation for deficiency in quantity of the land, will retain it and do complete justice between the parties, and will not relegate the plaintiffs to a court of law to recover damages for breach of warranty of title."

In *Danielson* v. *Gude,* 11 Colo. 87, 17 Pac. 283, 286, the maker of certain notes secured by a chattel mortgage instituted a suit to enjoin the payee and mortgagee from selling the property secured by the mortgage, on the ground

that the notes provided for compound interest, contrary to the contract of the parties. The court held that a court of equity "having obtained jurisdiction of the subject-matter through the injunction proceedings instituted by appellants (the maker of the notes), it could retain such jurisdiction for the purpose of deciding the whole controversy." The court said further: "It seems clear to us that there was not a total failure of consideration for the note secured by the mortgage, but that a good consideration existed to the extent of the amount of interest due upon the indebtedness at the time the note was given, less any deduction to be made on account of any payment made thereon."

No case has been found involving an injunction to restrain the transfer of notes given as the purchase price for a building contract in order to have damages arising from a breach of such contract credited toward payment of such notes. Several cases involving breach of other types of contracts are reported, however, in which this remedy was held proper.

In *American Soda Fountain Co.* v. *Hairston Drug Co.* (Tex. Civ. App.) 52 S. W. (2d) 764, 767 (1932) the court used this language: "An independent action to enforce the credit must rest upon some equitable ground, and since the credit claimed constituted a defense, *pro tanto,* to the notes, except in the hands of a *bona fide* holder, it follows that to obtain any relief it must be shown that the notes were not due, and there was danger of their passing into the hands of a *bona fide* purchaser before maturity. The only relief which equity could afford would be to enjoin the negotiation of the notes, or to compel by mandatory injunction, the entering of a credit thereon."

In *Atkinson* v. *Cain,* 61 W. Va. 355, 56 S. E. 519, 520, 123 Am. St. Rep. 984, one Cain conveyed land to Atkinson with general warranty, taking notes for the deferred purchase price. The title was encumbered by a previous judgment. To save his land from a judicial sale brought to satisfy this judgment, Atkinson paid the same. Atkinson then filed a bill to enjoin Cain from transferring the notes and to have

applied thereon as credit payment the sum paid by Atkinson in discharge of the encumbrance. The court granted the relief prayed for, saying: "Atkinson had the right to pay it, and right to set it off against the unpaid purchase money, and Cain might, and it was charged would, sell the notes, which in the hands of a purchaser for value without notice of the facts, would compel payment by Atkinson."

In *Zeigler* v. *Beasley*, 44 Ga. 56, the complainant brought his bill to restrain the transfer of notes given by him to the defendant as the purchase price for a tract of land, and for an equitable settlement. The land was valuable chiefly on account of its timber, which the defendant had sold previously to a third party. The court granted the injunction to prevent a multiplicity of suits on the notes, and retained the cause so as to have the whole matter in controversy between the parties in relation to the sale of the land settled by the decree on the final hearing of the bill.

In *McDunn* v. *City of Des Moines*, 34 Iowa 467 (1872), the plaintiff bought land from the defendant, giving notes secured by a mortgage for the deferred purchase price. It turned out that part of the tract conveyed had been dedicated to the city for a public street, and to that extent there was a failure of consideration for the notes. The defendant was a "married woman and irresponsible." It was held that the plaintiff was entitled to an injunction restraining a transfer of the notes and to such relief as the court may find proper to settle the entire controversy.

This principle was applied in the case of *Steindler* v. *Virginia Public Service Co.*, 163 Va. 462, 175 S. E. 888, 891, 95 A. L. R. 220, where a suit was instituted praying that Virginia Public Service Company be compelled to transfer stock on its books, and for damages for failure to make the transfer at the time requested. The trial court compelled the company to make the transfer, but denied the right of complainant to recover damages in the same cause. On appeal, the latter part of the decree was reversed on the ground that equity having acquired jurisdiction for the purpose of compelling transfer of the stock, it would retain the

cause and give the parties complete relief, even though such relief involved enforcement of a purely common law right. Chief Justice Campbell in delivering the opinion of the court quoted with approval from an English case, *Prothero* v. *Phelp*, 25 Law Jour. chapter 105, as follows:

"Why should the cause be divided into two suits—a part of the controversy to be adjudicated in a court of equity, and a part in a court of law? Why should two distinct and independent tribunals be invoked to dispose of a cause between the same parties, where their respective claims are so connected as to be inseparable? Why call upon a court of law to aid the court of equity, which has the undoubted original jurisdiction of the subject matter and of the parties, and is provided with all the machinery necessary to arrive at the same result, and in the same mode, if need be (trial by jury), which could be attained in a court of law? We cannot perceive the necessity or the propriety of such a practice. Nor can we find any authority among the modern decisions to require it."

In the *Steindler Case* the amount of damage was easily ascertainable; it was the difference between the market value of the stock at the time the transfer should have been made and its market value at the time the transfer was actually made. The amount of damages in the case at bar is not so easily ascertained, and from the testimony introduced by the parties it is apparent that the evidence on the question will be conflicting. Under these circumstances, plaintiff is entitled to have a jury, under proper instructions, assess unliquidated damages.

Appellant has had no opportunity to prove the amount of his unliquidated damages. Prior to the entry of the decree on November 30, 1932, he confined his evidence to the allegations in his bill, *i. e.*, that there was a breach of the building contract. When the court entered that decree, appellant requested an opportunity to introduce evidence showing what would be the cost of the corrections ordered made. This was denied, and thereafter evidence was confined to whether or not appellee had made the corrections in accord-

ance with the decree of the court. When the equitable relief set forth in the bill and its prayer had been denied, the court should have permitted appellant to present his claim in a common law forum, as requested.

For the reasons stated, the decrees in question are reversed and the case remanded, without prejudice to either party, but with directions to the lower court at the option of appellant to have the case dismissed or to have it retained on the docket, with leave for appropriate amendments to be made in the pleadings and for an issue out of chancery on the question of the amount of damages.

*Reversed and remanded, with directions.*