# Richmond.

ALLEMONG AND OTHERS V. AUGUSTA NATIONAL BANK AND
OTHERS.

November 23, 1904.

1. CONTRACTS—*Case in Judgment—Construction—Distribution of Funds—
Power of Sale—Dependent Covenants.*—In order to effect a rescission
in part of a contract of sale of real estate, appellees surrendered
$21,000 of their individual assets to the purchaser, and the pur-
chaser released a part of the land which had been conveyed to him.
Appellants and appellees, who were the vendors of the land, then
entered into a written agreement between themselves, by which
they agreed that the land released should be held in the name
of a trustee, and be sold by appellees whenever the same could be
sold for $100,000 or more, or, by consent of all parties, for less,
and that appellees should be repaid the $21,000 surrendered by
them, without interest, and that the residue should be divided be-
tween appellants and appellees, equally. Suit was brought by the
assignee of one share of the $21,000, for the sale of the land, and
payment of the amount due him.

*Held:* 1. It cannot be fairly presumed that, if from any cause a
sale *in pais* could not be made for the price named, the parties
intended to relinquish their legal right to resort to a court of
equity to compel a sale, or only to invoke the aid of that tribunal
on the terms of surrendering a priority to which they were en-
titled by the law and facts of the case, and hence this court has
power to decree a sale and a distribution of the proceeds.

2. The limited power of sale given the appellees and the scheme
of the distribution of the proceeds of sale are not dependent cove-
nants, but are separate and independent of each other.

3. The appellees should be first paid the $21,000, without interest,
and the residue divided equally between the appellants and the ap-
pellees. It is not a case for a ratable distribution.

4. This would be the proper distribution independently of the contract, and the contract is reasonably susceptible of this construction.

2. CONTRACTS—*Construction.*—Where a contract admits of two constructions, the general rule is that the court ought to adopt that which is most equitable, and which will not give an unconscionable advantage to one party over the other.

3. CONTRACTS—*Construction—Dependent Covenants.*—Courts construe agreements so as to prevent a failure of justice, and, discarding mere artificial reasoning and looking to the intent of parties as gathered from the entire instrument, hold dependent covenants to be independent when the necessity of the case and the ends of justice require it, notwithstanding the form.

Appeal from a decree pronounced by the Circuit Court of Rockingham county, in a suit in chancery, wherein the appellee, The Augusta National Bank of Staunton, Virginia, was the complainant, and the appellants and others were the defendants.

*Affirmed.*

The opinion states the case.

*John E. Roller* and *A. A. Phlegar,* for the appellants.

*Patrick & Gordon* and *Sipe & Harris,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

This controversy involves the construction of a clause in a written contract of settlement, entered into March 2, 1892, between appellants—J. W. F. Allemong, J. T. Shickel, D. B. Strouse and James Bonsack—of the one part, and appellees—Jed. Hotchkiss, H. M. Bell and R. H. Catlett—of the other part.

It appears that appellants and appellees sold the Mt. Vernon Iron property, of which they were equal owners, to the Grot-

toes Company for $100,000, half of which was paid cash, leaving a balance of $50,000, and interest, due as of September 1, 1891. The Grottoes Company having been advised that the sale was invalid, were threatening suit to set aside the same and recover the cash payment, when a compromise was effected by which the company relinquished to their vendors all claim to that part of the property lying east of the Shenandoah railroad, and abandoned the assertion of their right to recover the $50,000 theretofore paid by them. In consideration of which appellants and appellees conveyed to the company the residue of the property, consisting of fifty-seven acres of land, lying west of the Shenandoah railroad, and released them from liability for the balance due upon the original contract of sale. Appellees, in addition to the above inducements, to consummate the compromise, with the knowledge and consent of appellants, executed to the Grottoes Company an acquittance for $23,389.35, the amount of an individual indebtedness due from the Grottoes Company to them on the purchase price of the Grottoes of the Shenandoah property. It further appears that appellees had received $6,230 more than their half of the cash payment on the original sale, for which amount, in pursuance of the contract of settlement, they executed their joint negotiable notes to appellants. The contract also contains the following provisions:

"Now the parties hereto agree that the Mt. Vernon property lying east of the S. V. R. R., free of all claims of the Grottoes Company, shall be held for the benefit of the parties hereto in the name of Jed. Hotchkiss, trustee, and shall be sold by the parties of the first part (appellees) whenever the same can be sold for $100,000 or more, or by consent of all parties for less, and that the proceeds shall be divided among the parties thereto, as follows: First, there shall be paid to the parties of the first part the amount released by them on the Grottoes of

the Shenandoah property, to-wit: $21,000, without interest; and second, the balance shall be distributed one-half to the parties of the first part, and the other half to the parties of the second part."

The sale authorized by this agreement was never effected, and Hotchkiss having assigned his interest in the $21,000 to the Augusta National Bank, that institution filed a bill in equity against appellants and other parties in interest, asserting priority of claim for the $21,000 in the proceeds of sale of the Mt. Vernon Iron property lying east of the Shenandoah railroad, and praying for a sale of the property and distribution of the avails.

The appellants, by their answer, denied the interpretation placed upon the contract by the bank, and insisted that unless the property could be sold for $100,000 or more, "according to the terms of said agreement the fund would have to be distributed ratably, giving to the parties of the first part 60 1-2 *per cent.*, and to the parties of the second part 39 1-2 *per. cent.*"

The matter was referred to a commissioner in chancery, who sustained the contention of appellees, and the court, by the decree appealed from, confirmed the report of the commissioner and ordered a sale of the property.

Upon the foregoing facts, independently of express compact, it would have been incumbent upon appellants to reimburse their associates to the extent of one-half the value of the asset surrendered by them for the common good, or else to have provided for their indemnity in the ultimate division of the proceeds of sale of the joint property. A careful examination of the contract shows that the object of the parties, in adjusting their rights among themselves, was to secure an equal division of the social assets. To that end appellees, as remarked, made negotiable notes payable to appellants for the amount received by them in excess of their half of the cash payment on the

original sale; and it is not perceived that the demand thus secured occupies any higher ground than that asserted by appellees in this cause. It is reasonable to presume that it was the purpose and intention of appellants, by the stipulation referred to, to obligate themselves to do that which in fair dealing it was their duty to do, in order to equalize their associates in the distribution of the common fund and protect them against loss on account of the surrender of an individual asset for their benefit. The language employed is fairly susceptible of that interpretation; and, in the absence of express agreement to the contrary, that would have been the measure of relief accorded by a court of equity in an ordinary suit for partition. *Grove* v. *Grove*, 100 Va. 556, 42 S. E. 312.

It could not have been in contemplation of the parties that a sale of the property at the price fixed was a condition precedent to recompensing appellees for the expenditure made by them with their individual means. Indeed, the answer concedes that such is not the proper construction of the contract, but insists that if a sale should be made for less than $100,000, the fund ought to be distributed in the proportion of 60 1-2 *per cent.* to the appellees, and 39 1-2 *per cent.* to appellants. It is quite clear, however, that such a ratio of distribution is not justified, either by the contract or the principles of law applicable to the conceded facts.

Nor can it be fairly presumed that if from any cause a sale *in pais* could not be made for the price named, the parties intended to relinquish their legal right to resort to a court of equity to compel a sale; or only to invoke the aid of that tribunal on the terms of surrendering a priority to which they were entitled by the law and facts of the case.

Where a contract admits of two constructions, the general rule is that the court ought to adopt that which is most equitable and which will not give an unconscionable advantage to one party over the other.

"The words of a contract will be given a reasonable construction, where it is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and which will not give one of them an unfair or unreasonable advantage over the other. Thus, where the meaning is doubtful, the construction will be avoided which will entail a forfeiture." 9 Cyc. 587, and authorities cited.

The fundamental error in the contention of appellants consists in construing the limited power of sale given appellees in the contract and the scheme of distribution of the proceeds of sale as *dependent covenants*, whereas, in light of the context and according to a just interpretation of the agreement they are separate from and independent of each other, the former providing that the property "shall be sold by the parties of the first part whenever the same can be sold for $100,000 or more, or by consent of all parties for less"; and the latter declaring "that the proceeds shall be paid to the parties thereto as follows: First, there shall be paid to the parties of the first part the amount released by them on the Grottoes of the Shenandoah property, to-wit: Twenty-one thousand dollars ($21,000), without interest; and second, the balance shall be distributed one-half to the parties of the first part, and the other half to the parties of the second part."

This court has said: "Perhaps there is no other branch of the law in which is to be found a larger number of decisions or a greater apparent conflict of authorities than that in which the effort has been made to define the dependence and independence of covenants, and to designate the class to which any given case in dispute is to be referred. The great effort, however, in the more recent decisions has been to discard, as far as possible, all rules of construction founded on nice and artificial reasoning, and to make the meaning and intention of the parties, col-

lected from all parts of the instrument, rather than from a few technical expressions, the guide in determining the character and force of their respective undertakings." *Per* Daniel, J., in *Roach* v. *Dickinson,* 9 Gratt. 154.

"Courts construe agreements so as to prevent a failure of justice, and hold dependent covenants to be independent when the necessity of the case and the ends of justice require it, notwithstanding the form." *Todd* v. *Summers,* 2 Gratt. 167; *Brockenbrough* v. *Word,* 4 Rand. 352; *Bream* v. *Marsh,* 4 Leigh, 21; *Ayres* v. *Robins,* 30 Gratt. 105; see *note* to *Todd* v. *Summers* (title "Dependent Covenants"), Va. R. Anno. 322.

Applying the foregoing principles to the case in judgment, there is no error in the decree appealed from, and it must be affirmed.

*Affirmed.*