## Staunton.

## J. E. MILLER, ADM'R, ET ALS., v. SOUTHERN RAILWAY CO.

September 22, 1921.

Absent, Burks and Prentis, JJ.

1. LANDLORD AND TENANT—*Partial Eviction—Liability for Rent.*— An eviction occurs whenever a landlord wrongfully deprives a tenant of any part of the leased premises; and if the rent is entire, the tenant is excused from his obligation to pay during the continuance of the eviction, though he continue to occupy the remainder of the premises. The landlord cannot, by his wrong, apportion the rent.

2. LANDLORD AND TENANT—*Partial Eviction—Liability for Rent— Loss by Railroad of Material—Removal by Railroad of Connecting Track—Case at Bar.*—A mining company leased from a railroad certain material for its spur track, such as rails, frogs, spikes, etc., at a certain rental, and in the same instrument there was a provision for a connection of the spur track with the railroad's main track upon the railroad's right of way, the mining company to pay the railroad the cost of operation as long at it used the connection. Upon the discontinuance of the operation of the spur track by the mining company, the railroad company, without notice to the mining company, took up the connecting track on its right of way.

   *Held:* That this removal did not bar recovery by the railroad company of rental for the leased material, because the covenants were independent and the rent was not entire, and also there was no partial eviction of the mining company, as the contract provided for exclusive control and ownership of the connecting track by the railroad, and possession of it was never delivered to the mining company.

3. COVENANTS—*Dependent or Independent Covenants.*—Whether covenants are dependent or independent depends on the intention of the parties and the circumstances of the case, and dependent covenants are held to be independent when the necessity of the case and ends of justice require it, notwithstanding the form.

Appeal from a decree of the Circuit Court of Washington county. Decree for plaintiff. Defendants appeal.

*Affirmed.*

The opinion states the case.

*D. T. Stant,* for the appellant.

*Pennington, Price & Jones,* for the appellees.

SAUNDERS, J., delivered the opinion of the court.

In September, 1919, the Southern Railway Company filed its bill in equity in the Circuit Court of Washington county against J. E. Miller, administrator of W. B. Bennett, dec'd, Carrie I. Luther, Essie Marie Updegraff, and Donald Bennett, to attach the estate of the said Carrie I. Luther, Essie M. Updegraff, and Donald W. Bennett, and thereby enforce the collection of a claim alleged to be due from the estate of the said W. B. Bennett to the said railroad company. This claim arose in this wise. The Southern Mining and Manufacturing Company entered into a written contract with the Virginia and Southwestern Railway Company, on May 20, 1907, relating to a certain short line of railroad leading from Benhams, in Washington county, a point on the said Virginia and Southwestern Railway Company's road, to a proposed limestone and marble quarry in the county of Washington, the property of the said manufacturing company. The estate of W. B. Bennett now occupies the place of the Southern Mining and Manufacturing Company, and the Southern Railway Company, that of the Virginia and Southwestern Railway Company.

The Southern Railway, plaintiff in the bill, *supra,* claimed that certain rents were due it from the estate of said Bennett.

The sole question for decision is whether the railway

company, under the proper interpretation of the contract, *supra,* is entitled to collect its claim in full. The defendants demurred to the plaintiff's bill. This demurrer was sustained and leave given to amend the bill at bar. This was done. Thereupon the defendants filed their answer to the amended bill, admitting the contract relied upon by the plaintiff, and a portion of the claim for rent, to-wit: $151.-53, but denying any further liability. The case was heard upon the bill, answer, exhibits, and an agreement of facts, and a decree entered awarding the plaintiff the full amount of rent claimed. An appeal from said decree by the defendants brings the controversy before this court for review. The contract between the parties contains a number of covenants, and to reach a proper determination of this controversy, it will be necessary to determine whether these covenants are dependent, or independent. There are no controverted facts.

The indenture between the original parties, who are represented by the plaintiff and defendant, now before the court, recites that: "Whereas the first party (i. e. the Mining and Manufacturing Corporation) desires a connection with the second party's main line at Benham's, as shown on the map, and also wishes to lease from the said second party, for use on its said line of railroad, rails, frogs, switches, spikes, bolts and splices, and the party of the second part has agreed to afford said connection and lease said rails, etc. to the first party on the terms and conditions hereinafter mentioned. Now, therefore, in consideration of the premises, it is agreed between the parties hereto as follows:" According to paragraph two, the railroad company agreed to lease to the mining company for the consideration stated in the next succeeding paragraph the necessary rails, spikes, frogs, etc., and to lay and surface the tracks whenever the grading had been done, and the ties and timber furnished as provided by paragraph one. By the terms of para-

16

graph three, the mining company agreed to pay the railway company as a rental, six per cent on the total market value of said rails, etc., and the cost of laying and surfacing the tracks as per statement, etc.

With respect to the connection, it was provided by paragraph ten that the mining company should build its railroad to the right of way of the railroad company, and should furnish for such track all necessary materials, including rails, etc., and do the necessary grading.

By paragraph eleven, the railroad company was to lay said track, and the mining company to reimburse it for the cost of same.

By paragraph fifteen, the mining company agreed, so long as it used said track, to pay to the railroad company the actual cost of maintaining same, bills for the cost of maintenance to be paid annually. Reference will be made hereafter in their appropriate connection to other provisions of this contract. The plaintiff claims that pursuant to the contract, *supra,* rent was due from November 1, 1917, at the rate of $42.14 a month, up to July 1, 1919, the total being $884.94, principal, and $44.24 interest.

The defendants admit an indebtedness of $151.53, but set up as a defense to the balance of the claim that "in September, 1917, the plaintiff without giving the notice required by clause twelve of the contract, or any notice, took up the connection track, and removed from the premises the materials used in making said connection, and had not restored, or replaced the same up to the bringing of this suit, or until now, in violation of the terms of the contract."

With reference to this charge that the railroad company discontinued the connection track, the following citation is made from the agreed facts:

3. "For the purpose of additional safety to the complainants on its main track, in September 1917, without giving notice to the defendants, the complainants removed

the connection track referred to in the contract, and has not replaced the same. At that time the defendants' railroad was not being used for any purpose, and had not been used since operations ceased, as stated above, and defendants after the track was discontinued, not knowing of the disconnection, made no objection thereto, and no request to have the same reconnected."

Paragraph two of the agreed facts gives the date when the defendants discontinued the operation of their road, as well as other details.

2. "W. B. Bennett died June 11, 1916. The estate of W. B. Bennett operated said plant by W. M. Lundy, superintendent, after Bennett's death, but ceased all operations soon after February, 1917, and did not resume, or attempt to resume, operations thereafter, but left the property in charge of a caretaker while not in use, though the machinery, and equipment remained at the quarry which the railroad was built to serve."

[1] The contention of the defendants is that as a condition precedent to recovery of rent for the rails, etc., it was necessary for the plaintiff as a matter of pleading to allege, and as a matter of fact to prove, that the connection track was ready for use at any and all times during the period for which rent was demanded, and the fact that confessedly during that period the said track, due to the voluntary acts of the plaintiff, was not capable of use, is a bar to such recovery. This discontinuance of the connection track the defendants treat as an eviction from a portion of the leased premises, which operates to defeat the recovery of any rent thereafter so long as it continues. In support of this contention various authorities from this and other States are cited. "An eviction occurs whenever a landlord wrongfully deprives a tenant of any part of the leased premises; and if the rent is entire, the tenant is excused from his obligation to pay during the continuance of the eviction, though he continue to occupy the remainder of the premises. * *

The landlord cannot by his wrong apportion the rent." Williston on Contracts, section 891.

In *Briggs* v. *Hall,* 4 Leigh (31 Va.) 484, 26 Am. Dec. 326, it appears that the plaintiff leased the defendant a farm for one year for seventy dollars. During the year the landlord entered upon the leased premises, and mowed and carried away the hay on four acres without the consent and against the will of the tenant. At the end of the year the landlord sued for the entire rent. Upon proof of the foregoing facts, the court gave judgment for the lessee, and this was affirmed, this court holding that, for such partial eviction, the whole rent was extinguished.

[2] See also *Tunis* v. *Grandy,* 22 Gratt. (63 Va.), pp. 109, 120, affirming the proposition that if the "lessor himself wrongfully deprives the tenant of the whole, or any part of the premises, the tenant is discharged from the payment of the whole rent until possession is restored." There are two difficulties about the application of the principle announced by these authorities, to the facts of the case in judgment. First, the rent was not entire. A stipulated rent was agreed to be paid for the rails, etc. This rent according to paragraph three, *supra,* was six per cent on the total market value of the rails, etc., delivered on the ground, and the cost of laying and surfacing the track as per statement to be rendered. The defendants did not lease a short line of completed road from the plaintiff. The road was the property of the defendants. Said defendants leased certain personal property from the plaintiff to be used on their road at an agreed rent, with the right under paragraph four of the contract, within three years from the date thereof, to terminate the rental payments, and acquire the property by paying to said plaintiff the value of the rails, etc. Further, a special compensation, or rent was provided for the use of the connection track by paragraph fifteen of the contract, which is as follows:

(15)  "The first party so long as it uses said connection agrees to pay to the second party the actual cost of maintaining same, bills for the cost of maintaining to be paid annually on, or before, the 20th day of January, for the year ending December 31st, preceding."

Another difficulty in applying the principle cited is that under the facts of this case there has been no eviction in the sense contemplated by *Briggs* v. *Hall,* and kindred cases. The railroad company did not lease to the mining company a spur track of three miles, or more, and a connection track.   The spur track, as pointed out *supra,* was the property of the mining company.   The connection track was on the right of way of the railroad company, and possession of same was never delivered to the defendants. Paragraph fourteen of the contract provides that the railroad company "shall have the exclusive right to control and operate said connection track, and the right to exercise its ownership and franchise in and to the same in all respects, as if the said track had been constructed at its sole expense."

Paragraph twelve of said contract provides that "The ownership of all the materials in said connection track which are situated on the second party's right of way shall be and remain vested in the second party, and  *  .*  *." In substance, the contract between the parties was a lease, on agreed terms, of certain personal property for the use of the mining company on its own road, and an agreement on the part of the railroad company to furnish a connection, or liaison, to use a word greatly in vogue at present, between said road and the main line, the compensation, or rental for this link, when in use, being specifically fixed at the actual cost of maintenance.

Undoubtedly the railroad company was bound to furnish and maintain this connection track, for the uses and purposes of the Mining Company when operating its prop-

erty, and for injury to the said company resulting from its failure to afford this connection, the railroad company would be liable in damages. But it does not follow from this admitted liability in damages for breach of its contract to furnish a connection, that the contract to afford this connection was a dependent covenant. If the covenant relating to the personal property, and the rent therefor, and the covenant to afford a connection track are not dependent covenants, then a breach of the latter would not be a bar to recovery of rent under the former.

[3] There is much law upon the subject of dependent and independent covenants. The following is taken from 13 Corpus Juris, p. 567: "Agreements are mutual and dependent, where performance by one party is conditional on and subject to performance by the other, and a party who seeks performance, must show performance, or a tender, or readiness to perform on his part. Covenants, or stipulations, are independent when the consideration of the stipulation, on the one side, is the mutual promise on the other, and an actual performance, or tender, is not required, but the remedy on both sides is by *action.* (Italics supplied.) While the earlier cases recognized exceedingly nice and refined distinctions for the purpose of determining the character of the covenants, the rule is now thoroughly settled that the question of whether they are dependent, or independent, rests on the intention of the parties, to be determined from the sense of the entire contract, rather than from any particular form of expression."

To the same effect are the Virginia cases.

"Covenants are dependent, or independent, according to the intention of the parties, and the good sense of the case." *Brockenbrough* v. *Ward's Adm'r.,* 4 Rand. (25 Va.) p. 352.

"Covenants though dependent in form will be construed as mutual and independent when it is necessary to effect justice between the parties thereto. A party having cove-

nanted to do two things, one of which he has done, will be allowed to maintain an action for the part done, as upon an independent covenant." *Todd* v. *Summers*, 2 Gratt. (43 Va.) 168, 44 Am. Dec. 379.

"There is perhaps no branch of the law in which is to be found a larger number of decisions, or a greater apparent conflict of authorities, than that in which the effort has been made to define the dependence and independence of covenants, and to designate the class to which any given case in dispute is to be referred. The great effort, however, in the more recent decisions, has been to discard as far as possible all rules of construction founded on nice and artificial reasoning, and to make the meaning and intention of the parties, collected from all the parts of the instrument, rather than from a few technical expressions, the guide in determining the character and force of their respective undertakings." *Roach* v. *Dickensons*, 9 Gratt. (50 Va.) 156, 157. See also *Allemong* v. *Banks*, 103 Va. 249, 48 S. E. 897, as follows: "Courts construe agreements so as to prevent a failure of justice, and hold dependent covenants to be independent when the necessity of the case and ends of justice require it, notwithstanding the form."

An analogous situation to the one revealed in the case in judgment is presented in those contracts in which the landlord leases property and agrees to make repairs, and the lessee takes possession and agrees to pay rent. Such covenants are generally considered to be independent covenants. See cases cited in 16 Ruling Case Law, p. 943, foot note No. 14.

"Under a broad interpretation that the lease, as thus amended, demised a building to be used for the purposes of a theatre, in connection with which the plaintiff covenanted to provide additional means of exit, if called for by the public authorities, a failure to perform the promise does not constitute a defense to this action. When consid-

ered as a further covenant, this agreement is strictly analogous to the ordinary undertaking of the landlord to make outside repairs, which is independent of the lessee's obligation to pay the rent reserved; and any neglect by the plaintiff to make the improvements promised, even if by force of the statute, the premises without them became unfitted for use as a theatre, did not by reason of the breach, so long as the defendant chose to occupy them, give to him any right to decline payment of the rent." *Taylor* v. *Finnegan,* 189 Mass. 568, 76 N. E. 203, 2 L. R. A. (N. S.), p. 973, 976.

"The lease does not express, or imply that repair is a condition precedent to obligation to pay the rent; that repair must be made before payment of rent. The covenant could not apply after the fire. For its breach, if there had been any shown, the defendant could sue for damages in a separate action, or recoup from the rent. The landlord's covenant to repair, and the tenant's to pay rent, are independent covenants and at common law a breach of the former is no defense to an action on the latter, and this still remains the law both in England, and in the United States." *Arbenz* v. *Exley Watkins Co.,* 52 W. Va. 476, 44 S. E. 149, 61 L. R. A. 957, 960.

"A breach of a covenant on the part of a lessor is not a legal excuse for the nonpayment of rent. If a landlord fails to keep his part of the agreement, then a tenant can recover such damages as he may show he is entitled to, and when called upon to pay the rent may, as a defense, set up a breach of the lease, and offset the damages which he has sustained, against the rent due. A tenant, when called upon to pay rent, must do one of two things—he must either pay the rent due, or else restore possession of the premises to the landlord. He cannot keep both the rent and the possession." *Douglas* v. *Chesebrough Building Company,* 56 App. Div. 403, 67 N. Y. S., p. 755.

A very complete statement of this rule, or principle, is found in a case cited in a note on page 978, 34 L. R. A.

"The contract sued on does not belong to that class of covenants called conditional and dependent, in which the performance of the one depends upon the prior performance of the other, but to that class known in the law as mutual and independent covenants, where either party may recover damages from the other for the injury he may have sustained by a breach of the covenant in his favor, and where it is no excuse to the defendant to allege a breach of the covenants of the plaintiff in bar of his action. The effect of the charge is to exonerate the defendant from any liability whatever for the slightest breach of the plaintiff's covenants, whether the defendant has been actually damaged, or not, and leave him to the use and enjoyment of the plaintiff's property for nothing. If actually damaged by the plaintiff's nonperformance of his covenants, the defendant has the right of separate action, or his right in this action, to prove and recoup his damages, and the jury should have been so instructed. The reason of the rule of the law is that where a person has received a part of the consideration for which he entered into an agreement, it would be unjust because he had not had the whole, that he should, therefore, be permitted to enjoy that part without paying for it. The law, in such case, obliges him to perform the agreement on his part, and leaves to him his remedy, by recoupment, or otherwise, to recover any actual damages he may have sustained in not having received the whole consideration. 2 Parsons on Contracts, sections 531-532." *Smith* v. *Wiley,* 1 Baxt. (Tenn.) 418.

The contract in the case in judgment does not expressly state, or imply, that the maintenance of the connection track, whether it is needed or not for the purposes of the mining company, is a "condition precedent to obligation" to pay the agreed return for the rails, spikes, etc.

A special arrangement of compensation for the use of the connection track is provided by paragraph 15, that compensation being the actual cost of maintaining same. It is not an unreasonable deduction from the wording of this paragraph that it was in the contemplation of the parties that this connection track could be discontinued, certainly. that it need not be maintained, when it was not required for the purpose of the mining company. By the very terms used, the mining company is to pay for this connection track, "the actual cost of maintaining same," only "so long as it uses said connection." The fair inference from, or implication of, this language is that during such period, or periods, as the mining company did not use said track, the railroad company could not collect from said mining company the cost of maintaining same. A corollary from this would be that during such periods, the railroad would be under no obligation to maintain said track, since maintenance under such circumstances would be a vain thing.

A further indication that the covenants relating to rental for the rails, and compensation for the use of the connection track, were independent covenants, is afforded by paragraph twelve of the contract, which provides that the railroad company may "at any time when in its judgment the traffic received from the first party's railroad does not justify the maintenance of said track, upon thirty days' written notice to the first party, abandon said connection, and enter upon and remove from the premises all, or any part, of the materials thereon;" and by paragraph five conveying in trust the right of way of the short line to secure the "payment of the rent herein provided, as well as the payment of the value of the rails, etc., hereby leased, and the cost of laying and surfacing the track."

These separate provisions to secure the railroad company, the one in respect of the rental of the rails, etc., and the other in respect of the use of the connection track, are

hardly compatible with the theory that the right to recover the rent was dependent upon the maintenance of the connection track, whether there was any occasion for its use or not. There was a clear right on the one hand to demand, and an equally clear obligation on the other to construct and operate, when required for the uses of the mining company, the connection track, but the remedy on both sides, whether for the railroad company seeking payment for the cost of maintenance, or for the mining company complaining of failure to furnish connection, was by action.

The liability of the mining company to pay the agreed rental for the rails, etc., and the right of the railroad company to collect this rent, was not dependent upon the use of these materials. It was a matter of indifference to the railroad company, in one sense, whether these materials were used or not. Such use was the concern of the mining company. A man who lends money is entitled to his interest, whether the borrower uses this money productively, or buries it in a napkin. The mining company could require the railroad company to furnish the connection at any time that same was needed for its purposes, and for any failure to discharge its obligation in this respect, the railroad company was liable in damages to the party of the other part. It was perfectly competent in the present proceeding for the Bennett estate to set up and recover any damages that it had suffered by the failure of the railroad company to maintain said track, and its failure to do so was undoubtedly due to the fact that a party which had discontinued its own enterprise, and, therefore, had no occasion to use the connection track, could not show that it had sustained any damages by reason of the acts of said company in the above respect. Indeed not only did the defendants cease work at their quarry, and discontinue the operations of their short line in February, 1917, but this cessation was so complete during the succeeding period, that

they were not even aware of the discontinuance of the connection line.

Citing the language of the stipulation, the defendants "not knowing of the disconnection, made no objection thereto, and made no request to have the same reconnected." The trial court evidently regarded the covenant of the contract relating to rental for the materials furnished by the railroad company, and the covenant making provision for the use of the connection track, as independent covenants. With that conclusion we concur. The defendants lose no rights by the payment of the rent demanded in this suit, and if it is so desired, can proceed hereafter against the plaintiff by independent action, or proceeding, to secure any reparation, or enforce any right to which they are entitled under the contract in question.

We find no error in the action of the trial court, and the same is affirmed.

*Affirmed.*