# Richmond

## R. H. BOLLING v. KING COAL THEATRES, INCORPORATED.

January 13, 1947.

Record No. 3141.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Fred B. Greear* and *M. M. Heuser*, for the appellant.

*Lewis Preston Collins*, for the appellee.

BUCHANAN, J., delivered the opinion of the court.

This is a suit in equity brought by R. H. Bolling, complainant, against King Coal Theatres, Incorporated, defendant, for the rescission of a contract between the parties dated February 1, 1944, but executed February 11, 1944.

By this contract the complainant leased to the defendant the Bolling Theatre Building property in the Town of Norton for a term of four years, at a rental of $1,250 a month, payable monthly in advance, and, as part of the consideration for the rental, the lessee was given the option to purchase the property, including any motion picture theatre equipment, fixtures and accessories therein owned by the lessor, at a price of $33,000, at the expiration of the lease, on giving thirty days' notice of that intention. The lessor reserved the right of re-entry for failure to pay rent for two consecutive months, after ten days' notice in writing to the lessee; and also reserved an office for himself and beauty shop room for his wife in said building.

The lessee agreed, among other things, to pay rent as aforesaid; to keep the theatre equipment fully insured; to keep the leased premises in good repair and to hold the lessor harmless from negligent operation of the leased premises; to furnish heat and water for the building; to carry public liability insurance; to furnish the lessor and members of his immediate family, including grandchildren, passes to all shows; and to pay all taxes assessed against the land and the building.

This contract of lease and purchase was the sequel to a lease contract between these parties made February 15, 1941, to run for five years, and it expressly provided that it superseded and cancelled that lease. The old lease was for a rental of $700 a month.

The complainant erected the building in 1931 and operated it as a motion picture theatre, with financial success, as alleged in his bill, until the defendant became his competitor in Norton and thereafter complainant's operation was not financially successful, which he says was his reason for leasing to the defendant. In November, 1943, while the contract of February 15, 1941, was in force, there was a fire in the theatre which complainant claimed was due to the defendant's negligence and for which he claimed the defendant was liable to him. He collected $10,000 insurance for the damage, but declined to repair the building, claiming

that this did not cover his loss. There was controversy about this over a period of several weeks, during which the theatre was closed, and also some complaint from time to time from the complainant about insufficient heat in the building, failure to admit free some of his grandchildren to some of the shows, and the condition in which the building was kept. A great deal of the evidence relates to these differences, which, however, were under the 1941 contract, and as stated by the trial court, that evidence was irrelevant to the present issues, which arise and can be asserted only on the 1944 contract. After the contract of February, 1944, the defendant repaired the damage done by the fire at a cost to it of about $9,000, the complainant was allowed to keep the $10,000 of insurance he had collected, and the defendant resumed the operation of the theatre again in March, 1944. It paid the $1,250 a month rent to the complainant promptly each month, and the complainant accepted it until this suit was brought in December, 1944. Thereafter the rent was tendered and refused.

Soon after the 1944 contract was made the complainant became very much dissatisfied about it, due largely to disapproval of the transaction by some of his family. He regretted making the lease, he said, and wanted to buy it back to make amends to his family and to his own feelings. He began to negotiate with the defendant to rescind the contract and to buy the defendant's other theatre property in Norton. He was not successful in that effort and he resented the refusal of the defendant to trade with him. From then on, he said, they could count on his looking after his own interests and they would get no sympathy from him.

The bill alleged and the answer admitted that it was the understanding of the parties that the defendant would carry fire insurance on the building in the sum of $70,000, and that by mutual mistake the provision for that was omitted from the contract.

While the complainant charged in his bill a failure by the defendant to carry public liability insurance and fire insurance on the equipment, or a failure to deliver policies there-

for to the complainant, in his petition he states the grounds assigned for rescission were the failure of the defendant to do these things:

"(1) To pay the premium on a $70,000 fire insurance policy on the building.

"(2) To pay the real estate taxes assessed against same for the year 1944 by the Town of Norton and the County of Wise.

"(3) To furnish adequate heat for an office and store room in the building reserved by the lessor-optioner.

"(4) To grant free access to all shows and performances in the theatre to the petitioner and members of his family."

The defendant answered the bill, stated what it claimed about the matters alleged, averred its compliance with all the provisions of the lease, and denied there were any grounds to rescind it. Depositions were taken and the trial court entered its decree holding that the complainant was not entitled to the relief asked for and dismissing his bill, and this appeal was granted from that decree.

There are four assignments of error which allege, in effect, that the trial court erred in refusing to grant complainant any relief and in dismissing his bill, and that this error resulted from construing the undertakings of the defendant in the contract as independent or collateral, instead of dependent, with all the obligations of each made in consideration of all the obligations of the other; and in holding that the same rules applied in this suit for rescission as in a suit to enforce the forfeiture of a lease.

The able judge of the trial court filed a written opinion stating the reasons for his decree, and said, in part: "The lessor in his bill of complaint alleges the non-performance of certain collateral agreements by the lessee, some of which in the argument by counsel were admitted to be groundless, as they clearly appear to be from the evidence. Those relied upon are:" and he lists the four grounds stated in the complainant's petition as above. He discusses the evidence with respect to each item, concludes that at most there was only a technical and unintentional breach which the defendant was

ready to correct, and that the complainant has no standing in a court of equity. We think that conclusion is well supported by the law and the evidence in the case.

■ ■ We need not be greatly concerned as to the character of the agreements in the contract, whether they are dependent or independent covenants. That question is usually encountered as a defense against some right asserted on a contract. Agreements are said to be dependent where performance by one party is conditional on performance by the other; and independent where the consideration for the promise of one is the promise of the other, and an actual performance, or tender, is not required, but the remedy on both sides is by action. In early times refined distinctions were made, but it is now thoroughly settled that covenants are dependent or independent, according to the intention of the parties, and the good sense of the case. *Miller* v. *Southern Ry. Co.*, 131 Va. 239, 108 S. E. 838; *Roach* v. *Dickinson*, 9 Gratt. (50 Va.) 154; *Brockenbrough* v. *Ward*, 4 Rand. (25 Va.) 352. "Courts construe agreements so as to prevent a failure of justice, and hold dependent covenants to be independent when the necessity of the case and the ends of justice require it, notwithstanding the form." *Allemong* v. *Augusta Nat. Bank*, 103 Va. 243, 48 S. E. 897.

■ "A suit for rescission is the counterpart of a suit for specific performance. Both are addressed to the sound discretion of the court, and in neither will relief be granted to one who has been guilty of inexcusable delay in asserting the right." *Dobie* v. *Sears, Roebuck & Co.*, 164 Va. 464, 180 S. E. 289, 107 A. L. R. 1026.

■ Ordinarily, rescission will not be granted for breach of a contract which is not of such substantial character as to defeat the object of the parties in making the contract, or where the remedy at law is plain, adequate and complete. 9 Am. Jur., Cancellation of Instruments, sec. 7, p. 354; sec. 28, p. 374; *Rison* v. *Newberry*, 90 Va. 513, 522, 18 S. E. 916; *Newberry* v. *Ruffin*, 102 Va. 73, 45 S. E. 733; *Gall* v. *Tygart's Valley Bank*, 50 W. Va. 597, 40 S. E. 390; *Holderby* v. *Harvey C. Taylor Co.*, 87 W. Va. 166, 104 S. E. 550.

█ Rescission may be granted for a failure of consideration where such failure defeats the purpose of the instrument, as in *Echard* v. *Waggoner*, 126 Va. 238, 101 S. E. 245; but "where a party wishes to rescind a contract on the ground of failure of consideration, if the failure has been partial only and a subsisting executed part performance is in his hands, and there has been no fraud on the part of the other, rescission will not be allowed." *Riverside Residence Co.* v. *Husted*, 109 Va. 688, 64 S. E. 958. See also, *Texas Co.* v. *Northup*, 154 Va. 428, 153 S. E. 659.

The failures or non-performances relied on by the complainant in this case were accurately described by the trial court as technical and unintentional; they would have long ago been corrected if the complainant had been willing to accept the defendant's offers of correction; they have in no wise defeated the purpose of the contract, and the complainant's remedy at law for such as have not been corrected is plain, adequate and complete.

There has been no failure of consideration for the option to buy which the complainant wants to cancel. The contract declares in express terms that this option is part of the consideration for the rental to be paid, and which, as stated, has been promptly and regularly paid or tendered; and default in the payment of rent is the only thing for which re-entry, or forfeiture, is reserved by the contract, and that only after ten days' notice in writing.

The failure to pay the $644.23 fire insurance premium is no cause for rescission. As stated, this was not included in the contract, but the defendant sought no advantage on that account. It admitted this to be its obligation and on the day the contract was executed, February 11, 1944, it issued its check to Norton Insurance Agency for that amount, after the insurance had been arranged by or in the presence of the complainant, and pursuant to the agreement between the parties. The defendant's evidence is that this check was turned over to the complainant and a witness for the defendant testified that he saw the check afterwards in the complainant's office; but the complainant denies that he ever saw

the check and his bookkeeper supports him. However that may be, it is undisputed that the complainant received the policies from the insurance agency which understood that he was to get them; the insurance agency billed him for the premium, along with other premiums, in April, 1944; he paid their bill on June 3, 1944, and from that date until the institution of this suit in December, 1944, he made no request of the defendant for reimbursement and uttered no word to the defendant about it. He did not figure it was his duty, he said. In June, 1944, the defendant inquired of the insurance agency by letter what had become of its check and the agency replied that it had not received the check, but that the insurance had been issued and the policies and certificates turned over to Mr. Bolling; that Mr. Bolling had paid the premium, and it was their understanding he was to turn over the certificates to the defendant. The defendant was not put on guard by the fact its check had not been used, because the complainant had previously held its checks for rent for long periods before using them. In the meantime the complainant received and accepted monthly checks for rent, knowing of the existence of this matter which he now relies on as ground for rescission. The complainant's act in paying the premium was voluntary, and if the defendant's failure to pay it, under the circumstances, was ever ground for rescission he could not take advantage of it now, after accepting payments of rent. *Holderby* v. *Harvey C. Taylor Co., supra; Hawkins* v. *Coston,* 214 Ala. 135, 107 So. 50.

In the contract the lessee agreed to pay all taxes assessed against the land and building during the term of the lease. The complainant had the theatre property segregated into a separate assessment on the land book, so a separate tax ticket would be issued therefor, but still in his name, of course, as he was the owner. Following the usual practice, statements of the tax due the county and town for 1944 were sent to the complainant before the penalty date, December 5, of that year. He did not forward these statements to the defendant or otherwise call the matter to the defendant's attention. He waited until December 5, paid

the tax and then brought this suit on December 26, alleging this failure as ground for rescission. Upon receiving notice of what the complainant had done, by means of the suit, the defendant forwarded to him a cashier's check for $588, the amount paid by the complainant, which check he declined to receive, returned it to the defendant, and it is with the record as an exhibit. He did not send the statements to the defendant, he said, for the same reason that he did not try to collect the premium on the insurance policies—he did not consider it his obligation.

There is little substance to the charges of failure to furnish heat and to furnish free passes to the shows. There was some complaint about the heat under the old contract, but none by the complainant or anybody else to the defendant or any of its agents, after the new contract was made. He was asked on his direct examination whether he had made any complaint with reference to the heating plant since the 1944 contract and he said he had not, that he "didn't think it was worth the time." The evidence was that the heat in the office adjoining that used by the complainant was satisfactory. It would hardly be a reasonable construction of the contract to require the defendant to inquire every day whether the complainant was warm enough. It would be reasonable to presume that if he were not he would say so. Complaint to the local manager or even to the janitor would probably have been sufficient to remedy the condition.

There was some evidence that once or twice one or two of the grandchildren of the complainant had not been admitted to the theatre free. The complainant testified that neither he nor his wife nor his children had ever been turned down, but two of his grandchildren had on two occasions. He said that after having attention called to it the situation was corrected. Even this must have been during the time of the old contract, because he said on cross-examination that after the 1944 contract he did not take the matter up with anybody. The defendant gave instructions to its employes to admit the complainant and his family free, as provided by

the contract, and its evidence is that the instances when it was not done were due to mistaken identity or some question about who was to pay the admission tax.

 The four grounds relied on for rescission, taken singly or together, are not, under the circumstances shown, sufficient to warrant a rescission of the contract. In ordinary relations they could and would have been adjusted amicably. The complainant may have his rent and the taxes he paid, which have been tendered and refused, and the defendant does not deny its obligation to pay the insurance. It would be harsh and inequitable in the extreme to rescind this contract for the reasons advanced in this record. Those who invoke the aid of equity to rescind a contract must do equity, and cannot prevail on the sole ground that it is written in the bond. Of specific performance it was said in *Stearns* v. *Beckham*, 31 Gratt. (72 Va.) 379, 389, "A man who calls for specific performance must be able to show that his conduct has been clear, honorable and fair. It is a principle in equity that the court must see its way very clearly before it will decree specific performance, and that it must be satisfied as to the integrity and good faith of the party seeking its interference."

The same is true as to rescission, its counterpart.

The decree of the trial court is plainly right and is

*Affirmed.*