**ALSTON STUDIOS, INC., Appellant,**

v.

**LLOYD V. GRESS & ASSOCIATES et al., Appellees.**

**No. 73–1152.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 7, 1973.

Decided Feb. 28, 1974.

---

9. 16 V.I.C. § 109(5) empowers the court to appoint "one or more trustees to collect, receive, expand, manage, or invest, in such manner as the court shall direct, any sum of money adjudged for the maintenance of the wife. . . ." At best, the express language of the statutory trust provision describes a trust on a sum certain, "any sum of money adjudged for the maintenance of the wife. . . ." We do not indicate that authority for a reversionary trust could not be implied from statutory language. We note simply the absence of express language authorizing it.

10. At oral argument his counsel also suggested a trust wherein the corpus would revert to the children. This suggestion overlooks the reality that the financial aspects of this divorce decree took two separate routes: one, an award to the wife, and two, a separate award to the children. To commingle the awards now would be to flout the clear language of the decree and the basic schema of the court's adjudication.

11. Appellant's additional argument that there was no evidence to support the award to the children is rejected as frivolous.

Robert F. Brooks, Richmond, Va. (Lathan M. Ewers, Jr., Hunton, Williams, Gay & Gibson, Richmond, Va., Arnold D. Abelson, Abelson, Bromberg & Katz, New York City, on brief) for appellant.

Leonard A. Orman, Baltimore, Md. (John J. Dilli, Jr., Orman & Dilli, Baltimore, Md., and Albert H. Grenadier, Alexandria, Va., on brief) for appellees.

Before HAYNSWORTH, Chief Judge, and BUTZNER and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

This is an appeal from an action involving the termination of a written contract of employment and the effect of that termination upon non-competition and severance compensation provisions of the contract. The suit was instigated by Alston Studios, Inc. (Alston) against Lloyd V. Gress & Associates and Lloyd V. Gress (Gress) seeking enforcement of a covenant not to compete and damages for its breach. Gress filed a counterclaim alleging that the noncompetition provision was unenforceable as a matter of law and that he was entitled to severance compensation whether or not he terminated the contract and whether or not he competed with Alston. Although both parties maintained that the other had terminated the contract, Alston asserted that the non-competition provision was valid in either event, and that, since it provided the consideration for severance compensation, Gress had forfeited any right to post-termination pay by competing with Alston.[1]

The district court found the non-competition provision unenforceable, declined to enjoin Gress from competition, and awarded him $13,307.69, a part of which was for compensation due following termination of the contract. This appeal followed. Because the covenant not to compete. lacks geographic limitations, and is excessively broad as to the activities prohibited to Gress after his termination, we agree with the district court that it is excessively broad and unenforceable. But, for reasons that follow, we hold that Gress may not recover compensation after April 23, 1971, the day his notice became effective.

Alston is a Massachusetts corporation, whose principal activity is the photography of school children during the school year. Photographs are taken and developed on a speculative basis and offered to the children in various sizes and packages. The schools whose students purchase the pictures receive a percentage of the purchase price as a commission. Alston carries on these activities through a number of regional agents, one of whom was Gress.

Gress first became associated with Alston in 1951 and worked there for two years. He then left Alston's employ for approximately five years and returned for the second time, in 1959. From that time, he worked continuously for Alston until the contract about which this dispute revolves was entered into in April 1966, and made retroactively effective to date from August 1, 1965.

The contract employed Gress "as District Sales Manager in the States of Virginia, Maryland and Washington, D.C.," for an annual salary of $12,000.00, plus a specified. commission based on sales and various described fringe benefits and expenses. The term of the contract was for one year and "for such further time as the parties shall mutually agree upon subject to: Termination by either party after July 31, 1966, upon thirty (30) days' written notice. . . ." The effect of termination upon the parties' subsequent obligations and activities was also treated in the contract by the following provisions:

"2. Whereas in consideration of the mutual cancellation of the aforesaid agreement of employment, and in further consideration of compensation to be paid as stated in Paragraph 3 of this Agreement and in further consideration of this contract of employment from August 1, 1965, for such period as the parties shall continue said employment, the said Lloyd V. Gress agrees that upon termination of said employment as District Sales Manager, he will not continue in the school

---

1. The district court found that Gress had not violated the agreement, and we are bound by that finding, F.R.Civ.P. 52(a); however, in the context of the dispute presented here, it is not material, for the contract provides for compensation following the severance of Gress ". . . on the termination of this agreement by death or otherwise. . . ." Cf. *Meissel*, infra, 198 Va. p. 584, 95 S.E.2d p. 186, as to the effect of the agreement after termination.

picture business, either directly or indirectly, for himself or any individual or company in said business for a period of two (2) years.

"3. * * * *

(b) It is agreed that on termination of this agreement by death or otherwise, the said Lloyd V. Gress is to receive compensation for the first two (2) years following termination as follows:

First year: Fifty (50) percent of compensation paid to him for the previous twelve (12) months employment including base salary and bonus paid to him for override of packages shipped in the area in which he was employed.

Second year: One half of the compensation paid to him for the first year after said termination."

Thereafter, on September 1, 1970, National Color Laboratories (NCL) acquired Alston as a wholly owned subsidiary. Within a short time, a series of meetings followed in Cleveland, attended by Gress, for the purpose of introducing to the sales force a plan known as the NCL profitability program. Fearing that the new program, if implemented, might yield results to his detriment, Gress submitted, on March 1, 1971, a letter of resignation effective one month from date of receipt. A period of negotiations ensued and drafts of different agreements were exchanged but never mutually executed. Gress reaffirmed the termination of his contract with Alston effective April 23, 1971, by telegram.

The same date on which Gress' termination of his relationship with Alston became effective, he signed an agreement with School Pictures, Inc., a competitor of Alston. Gress then began calling on Alston's customers whom he had pre-viously served for his former employer. Alston brought suit on June 4, 1971, seeking to enjoin Gress from competing, and claiming damages for breach of contract. Gress answered and counterclaimed on June 24, 1971, asserting that the covenant not to compete was unenforceable as a matter of law, and that he was entitled to severance compensation in accordance with Paragraph 3 of the contract. The district court held in favor of Gress on both the complaint and counterclaim as before indicated.

In Paragraph 2 of their agreement, Gress agreed that upon termination of his employment with Alston as district sales manager he would "not continue in the school picture business, either directly or indirectly, for himself or any individual or company in said business for a period of two (2) years." Restrictive provisions of this general nature have been dealt with by Virginia courts in several cases.[2]

The two issues before us are: (1) Whether the non-competition clause was void or unenforceable; and (2) whether Gress may recover severance compensation despite his competing with Alston in violation of the terms of the contract.

In Meissel v. Finley, 198 Va. 577, 95 S.E.2d 186 (1956), the Virginia Supreme Court adopted three criteria to be used as a guide to decision by courts passing upon such contracts: (1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than is necessary to protect the employer in some legitimate business interest?; (2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his legitimate efforts to earn a livelihood?; (3) Is the restraint reasonable from the standpoint of a sound

---

2. In this diversity case, mindful of Erie Ry. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the forum being Virginia, and nothing to the contrary appearing in the record, the law of Virginia should apply. Klaxon Co. v. Stentor Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Moreland v. Moreland, 108 Va. 93, 60 S.E. 730 (1908); Waggaman v. General Finance Co., etc., 116 F.2d 254 (3rd Cir. 1940).

public policy?[3] Citing Worrie v. Boze, 191 Va. 916, 62 S.E.2d 876 (1951), the *Meissel* court acknowledged that restrictive covenants which reasonably protect the employer's business may be enforceable in equity, if they are incident and ancillary to the contract of employment and limited as to area[4] and duration.

In Virginia, the "employer has the burden of proving that the restraint is reasonable and the contract is valid. Since the restraint sought to be imposed restricts the employee in the exercise of a gainful occupation, it is a restraint in trade; as such it is carefully examined and strictly construed before the covenant will be enforced." Richardson v. Paxton Co., 203 Va. 790, 795, 127 S.E. 2d 113, 117 (1962).

One obvious difficulty with the restriction in the instant case is that it lacks geographic limitation. Another is that it is too broad in that it encompasses activities in which Gress was not engaged. Under the explicit terms of the agreement, Alston is free to prevent its former employee, Gress, from engaging in any aspect of "the school picture business, either directly or indirectly" throughout the fifty states, or, indeed, anywhere in the world. There is no language limiting the restriction to areas of possible competition, or zones of Gress' past representation, or areas in which Alston actually does business, or to activities in which Gress had been engaged. Viewed in this light, the provision appears far broader than necessary to protect Alston's legitimate business interests. Indeed, it imposes an unduly harsh burden upon Gress by curtailing his legitimate efforts to earn a living. Accordingly, because of its limitless geographic application, and too-broad encompassment of activities in which

Gress was not engaged, we hold the provision unenforceable and void.[5]

A non-competition clause unlimited both as to the activities of future employment and as to geography has never been considered by the Virginia Supreme Court.

*Welcome Wagon* did consider such a covenant unlimited as to future activities and geographically limited only by those parts of "the United States or Canada" in which the employer had been in business or had signified his intention to be in business. The court there held "that the restrictive covenant, taken in its entirety, is void," and further went on to say that, even had the court not held the covenant void ". . . we think this covenant here might fairly be characterized as harsh and oppressive." A similar covenant binding an employee not to compete without geographical limitation for a period of five years was held to be unenforceable under Virginia law in Davis Robertson Agency v. Duke, 119 F.Supp. 931 (E.D.Va.1953). The court said the covenant was "unnecessarily restrictive of the employees' rights."

In Richardson v. Paxton Company, supra, concerning a salesman for a marine supply company, the Virginia court again followed the reasoning of *Welcome Wagon* and held unenforceable a covenant unrestricted in scope as to activities in future employment as is the one under consideration here, although later activities of the salesman under his new employer were substantially the same as under the old employer. The covenant is ". . . unreasonable from the standpoint of . . . [the employee] because it is unduly harsh on him in curtailing his legitimate efforts to earn a

---

3. The Virginia Supreme Court, in essence, adopted the standards applied in the then-recent Fourth Circuit decision in Welcome Wagon v. Morris, 224 F.2d 693, 698 (4th Cir. 1955), decided under North Carolina law.

4. In *Meissel*, the agreement of a limited partner not to compete within 50 miles of

Norfolk after dissolution of the partnership was held enforceable.

5. Those cases in which Virginia courts have upheld similar restrictions have involved quite narrow and well defined geographic limitations. See *Meissel*, supra. Worrie v. Boze, supra, enforced such an agreement "within 25 miles" of Richmond.

livelihood." 203 Va. p. 795, 127 S.E.2d p. 117.[5A]

Alston maintained in the district court and argues here that, although the non-competition clause did not expressly specify in Paragraph 2 the area to which it applied, implicit throughout the contract is the meaning that its terms are to apply to Gress only in the geographic area (Maryland, Virginia, and Washington, D.C.) assigned to him in Paragraph 1. In further support of this argument, National Homes Corp. v. Lester Industries, Inc., 293 F.Supp. 1025 (W.D.Va.1968), affirmed as modified, 404 F.2d 225 (4 Cir. 1968), is cited for the proposition that a restrictive covenant, although broad on its face, might nevertheless be enforced in those areas where the parties involved are in actual competition. We find National Homes inapposite since the clear terms of the restriction construed in that case applied only to those areas where the parties were "in competition."

An equally strong, or even stronger, reason for distinguishing National Homes is that National Homes involved the sale of a regional manufacturing business to a large national manufacturer. The owner of the business sold was made the president and chief executive of it as a subsidiary of the purchaser, also received substantial stock options, and was made a director of the parent corporation (the purchaser). As such, he was bound to have acquired knowledge of the most important records of the parent company, including financial statements, price scale, and trade secrets. The district court on these aggravated facts, on default judgment, enjoined the former owner of the business sold from competing with the parent company during the term for which he was employed within the United States in accord with a literal reading of the agreement.

We note particularly that in National Homes the decree of the district court was entered by way of default judgment, so the validity and extent of the covenant not to compete was not considered by us on appeal, our opinion confining itself to the application of the order of the district court and the proper extent of the injunction entered by default to the facts at hand in that case. Neither the district court nor this court, then, in National Homes decided that the broad covenant there enforced by way of default judgment was susceptible of partial enforcement resulting from a judgment not by way of default, and we have found no Virginia case so holding.

In all events, the law applicable when the sale of a business is involved and that when only an employee is involved, as here, is different. "[T]he scope of permissible restraint is more limited between employer and employee than between seller and buyer, and the covenant is construed favorably to the employee." Richardson, 203 Va. p. 795, 127 S.E.2d p. 117. Conversely, greater latitude is allowed in determining the reasonableness of a restrictive covenant when the covenant relates to the sale of a business than in those ancillary to an employment contract. Day Companies v. Patat, 403 F.2d 792 (5th Cir. 1968).

This precise question, however, was presented to this court in Welcome Wagon where the geographical extent of the covenant, although not worldwide as here, was limited only by the United States and Canada. The plaintiff there had asked the court to ". . . hold it valid insofar as this covenant applies to the City of Gastonia, and that we might enjoin . . . [the employee] from pursuing her present activities in Gastonia." We held: "We cannot agree with this suggestion. We think the restrictive covenant must be judged as a whole and must stand or fall when so judged." Welcome Wagon, 224 F.2d p. 701. We see no reason to depart from the holding in Welcome Wagon, and we follow it here.

---

**5A.** The employee here is a middle echelon employee, neither a principal executive, nor merely an hourly paid worker.

Because restraints of trade are disfavored in Virginia, we must give effect to the language of the agreement, strictly construed. See Linville v. Servisoft of Virginia, Inc., 211 Va. 53, 55, 174 S.E.2d 785 (1970); Richardson v. Paxton Co., 203 Va. 790, 127 S.E.2d 113 (1962). We construe the agreement, reading it literally and construing it favorably to the employee, as an attempt to impose a post-employment restraint upon Gress without geographic or other limitation. We must therefore decline Alston's invitation to read into the agreement limitations which simply are not there.

The second issue involves the district court's award of post-termination compensation to Gress in the amount of $13,307.69. The court's action was predicated on the view that there was nothing in the employment agreement making Gress' post-employment compensation contingent upon his compliance with the restrictive covenant after termination and that, even if there had been, that contingency would not have been enforceable since the covenant was unenforceable.

The two provisions, however, appear inextricably tied. Paragraph 2 of the Alston contract specifically states that "in further consideration of compensation to be paid as stated in Paragraph 3 of this Agreement . . . Gress agrees that upon the termination of said employment as District Sales Manager, he will not continue in the school picture business. . . ." The provisions are mutually dependant since "neither party could insist upon the other's performing his part of the covenants, unless he himself performed, or offered to perform his covenants at the appointed time." Robertson v. Robertson, 3 Rand. (24 Va.) 68, 70 (1824); see also Bolling v. King Coal Theatres, 185 Va., 991, 41 S.E.2d 59, 62 (1947).[6]

Generally, when a contract covers several subjects, some of whose provisions are valid and some void, those which are valid will be upheld if they are not so interwoven with those illegal as to make divisibility impossible. Bristol v. Dominion National Bank, 153 Va. 71, 149 S.E. 632 (1929); cf. Norfolk Motor Exchange v. Grubb, 152 Va. 471, 147 S.E. 214 (1929). Here, the excessively broad covenant not to compete is ancillary to an otherwise valid contract of employment between Gress and Alston Studios. But the severance compensation clause, the principal consideration for the covenant, is so interwoven with the void portion of the agreement as to be unenforceable. Bristol v. Dominion National Bank, supra. Consequently, Alston is under no obligation to make severance payments.

The case must be remanded for entry of judgment in favor of Gress in an amount not to include compensation under the contract for any period after April 23, 1971, and for such other proceedings as may not be inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded.

---

6. *Bolling*, at p. 996, 41 S.E.2d at p. 62, stated a rule of construction in such cases: "In early times refined distinctions were made, but it is now thoroughly settled that covenants are dependent or independent, according to the intention of the parties, and the good sense of the case." Gress' intent that the covenants be dependent is shown in his letter to Alston dated March 26, 1971:

"Accompanying this letter is a proposal with alternative clauses for my franchise agreement. It is acceptable to me for the following reasons:

\* \* \* \* \*

because I feel very strongly at this point in time that I owe Alston Studios nothing and they owe me nothing (except for the payment under current contract if I do not compete for two years). This is fair because each party receives value."