John L. GRANT, Appellee,

v.

CAROTEK, INC., Appellant.

No. 83–2062.

United States Court of Appeals,
Fourth Circuit.

Argued May 9, 1984.

Decided June 18, 1984.

Andrew J. Ellis, Jr., Richmond, Va. (David G. Shuford, Mays, Valentine, Davenport & Moore, Richmond, Va., on brief), for appellant.

Francis T. Eck, Richmond, Va. (Hooker & Eck, Richmond, Va., on brief), for appellee.

Before RUSSELL and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

ERVIN, Circuit Judge:

John L. Grant is a former employee of a North Carolina chemical processing equipment distributor known as "Carotek, Inc." In November of 1982 Carotek discharged Grant. With the help of another former Carotek employee, Grant proceeded to form his own distribution company. Grant's contract with Carotek, however, included a "Non-Competition Clause" that purported to cover Grant's activities for five years after the termination of his employment with Carotek. In March of 1983 Grant filed a suit in diversity in federal district court to obtain a declaratory judgment stating that the non-competition clause was void and could not be enforced against his new business. Carotek responded by filing suit against Grant, alleging that Grant had violated the covenant not to compete. Carotek sought injunctive

relief and damages. The actions were consolidated, and the district court ruled for Grant on the ground that the non-competition clause was overly broad. We affirm.

## I.

Carotek sells and distributes chemical processing equipment in Virginia, North Carolina, and South Carolina. John Grant was first hired by Carotek in August of 1975. From 1975 to 1982, Grant held positions as salesman, vice-president, executive vice-president, and manager of Carotek's Virginia operations. It is undisputed that while he served in these positions Grant was privy to confidential information about Carotek's operations, finances, and customers.

Three days after Grant was fired he started a new company entitled Engineered Systems & Products, Inc. (ESP). ESP was formed as a chemical processing equipment distribution company. With the help of his partner, Christopher H. Isenberg, Grant began contracting with manufacturers formerly represented by Carotek. ESP's operations, therefore, competed directly with Carotek's Virginia operations.

At the time Grant left Carotek's employ he was working under a contract that contained a non-competition clause. The clause stated that:

> NON–COMPETITION CLAUSE. In consideration of the foregoing, the EMPLOYEE agrees not to contract with any of the principles [sic] or manufacturers with which the EMPLOYER has contracts for a period of five (5) years after termination of his employment. This covenant not to compete shall be limited to the states of the United States where the EMPLOYER is doing business at the time of termination of the EMPLOYEE'S employment.

Concerned about the legal implications of this clause for his new business Grant filed this action for a declaratory judgment in March of 1983.

The district court concluded that the non-competition clause was in fact overly broad, and that Carotek had no legitimate business interest in prohibiting such a wide scope of activities. The lower court was particularly concerned with the part of the clause that stated that "the EMPLOYEE agrees not to contract with any of the ... manufacturers with which the employer has contracts." In the court's view this prohibition went beyond a reasonable restraint designed to protect a company from unfair competition because on its face it barred Grant from entering into *any* contracts—even those having nothing to do with chemical equipment distribution—with Carotek's clients.

On appeal, Carotek argues that the clause, when read in its entirety, only restricts Grant from entering into contracts with Carotek's clients "for the sale and distribution of chemical processing equipment." This, Carotek insists, is both a reasonable and a limited restraint. In addition, Carotek contends that the district court failed to ascertain accurately the parties' intent. In Carotek's view, the parties never contemplated that the clause could or would be used to bar all contracts with Carotek's clients.

## II.

As a general rule, Virginia law does not look favorably upon restraints of trade.[1] The employer bears the burden of showing that the restraint is reasonable. *Alston Studios, Inc. v. Gress & Associates,* 492 F.2d 279 (4th Cir.1974); *Richardson v. Paxton Co.,* 203 Va. 790, 127 S.E.2d 113 (1962). More important, Virginia law requires that non-competition clauses be strictly construed against the employer. *Alston Studios,* 492 F.2d 279; *Richardson,* 203 Va. 790, 127 S.E.2d 113; *accord Roanoke Engineering Sales Co. v. Rosenbaum,* 223 Va. 548, 290 S.E.2d 882 (1982);

---

1. Jurisdiction in the district court was based on 28 U.S.C. § 1332. We are required, therefore, to apply the law of Virginia. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**412**

*Foti v. Cook,* 220 Va. 800, 263 S.E.2d 430 (1980).

 To determine if a restraint is reasonable, Virginia courts have applied a three-prong test:

(1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than is necessary to protect the employer in some legitimate business interests?; (2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his legitimate efforts to earn a livelihood?; (3). Is the restraint reasonable from the standpoint of a sound public policy?

*Alston Studios,* 492 F.2d at 282–83. We agree with the lower court that on its face the non-competition clause fails to pass muster. As the trial court correctly pointed out:

[T]he clause would prohibit Grant from contracting with Carotek's manufacturers and principals on any matter, whether or not he would actually be competing with Carotek for any such contract. He could not, for instance, contract to provide them office supplies without violating the clause. Perhaps more realistically, he would be prevented from contracting to represent them in product lines in which Carotek might have no involvement or interest ... Conceivably the non-competition clause could be interpreted more narrowly, but Virginia law requires that it be strictly construed against the employer .... In this case the broad interpretation of the clause is certainly the understanding that would most probably occur to the employee trying to circumscribe his behavior to comply with it.

Carotek contends that the plain language of the clause should be interpreted in a more restricted manner. Specifically, Carotek argues that the use of the phrases "non-competition clause" and "covenant not to compete" effectively limits the restraint only to those contracts involving direct competition with Carotek in the area of chemical processing equipment distribution. We find this logic strained. The term "competition" is sufficiently broad to include a wide spectrum of contracts. We are not convinced that the use of this term can be read to alter the plain meaning of the first sentence of the clause. Furthermore, Virginia law requires that the language of the restraint be strictly construed against the employer. *See Worrie v. Boze,* 191 Va. 916, 62 S.E.2d 876 (1951). Under these circumstances, Carotek has not met its burden of showing that the restraint was reasonable.

Despite the plain language of the clause, Carotek further contends that we should give the clause a different meaning based on an independent assessment of the parties' intent. This we decline to do. "If a writing appears to be plain and unambiguous on its face its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any nature." J. Calamari & J. Perillo, *Contracts* 117 (2nd ed. 1977). The wording of the clause at issue here is anything but ambiguous. In simple language, the clause prohibits Grant from making any contract with Carotek's clients. We see no reason, therefore, to look beyond the language of the contract to other evidence of the parties' general intent.[2]

### III.

For the foregoing reasons, the judgment of the lower court is

**AFFIRMED.**

---

**2.** Even if we were to look beyond the four corners of the contract, the extrinsic evidence is not as clear as Carotek suggests. Carotek relies heavily upon an affidavit submitted by Carotek's president to argue that the covenant was intended to be a limited restraint. Under the circumstances, the credibility of such a document is questionable. Without more, we believe the district court would be hard pressed to determine accurately from this extrinsic evidence the parties' true intent.