812 F.2d 1400
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Joseph FATH, Rita Kotlowski, Plaintiffs-Appellants,
v.
DART GROUP CORPORATION, formerly Dart Drug Corporation,
Defendant-Appellee,
Herbert H. Haft, Chairman of the Board, Defendant.
 No. 86-1601.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 13, 1986.
Decided Feb. 20, 1987.
 
 Before RUSSELL and HALL, Circuit Judges, and McMILLAN, United States District Judge for the Western District of North Carolina, sitting by designation.
 David Rosenblum (Herbert S. Rosenblum, Rosenblum & Rosenblum; Alan Schachter on brief) for appellants.
 Rodney F. Page (R. Steven Holt, Arent, Fox, Kintner, Plotkin & Kahn on brief) for appellee.
 PER CURIAM:
 
 
 1
 Joseph Fath and Rita Kotlowski, plaintiffs in a diversity action for breach of contract, appeal the district court's order entering judgment for defendant, Dart Group Corporation ("Dart"), following a bench trial.[1] We affirm.
 
 I.
 
 2
 Plaintiffs are two former employees of Dart who worked in the corporation's retail drug store subsidiaries prior to the sale of those subsidiaries on June 29, 1984. Plaintiffs claim that Dart breached certain stock option agreements entered into between the parties before the sale of the drug stores.
 
 
 3
 Dart was organized in 1954 by Herbert H. Haft and members of his family. The corporation was originally engaged in operating retail drug stores in the Washington, D.C. area. By the time of the sale on June 29, 1984, Dart's drug store subsidiaries operated approximately 75 retail discount drug stores, home centers, and health and beauty stores in Virginia, Maryland, and the District of Columbia.
 
 
 4
 In addition to its drug store operations, Dart had other assets that it owned and operated, including an interest in Trak Auto Corporation ("Trak"), which retails automotive parts and accessories in the Washington, D.C. area and in California. Dart had organized one of Trak's predecessor corporations in 1979 and, as of June 29, 1984, owned approximately 66% of the outstanding shares of Trak's common stock. Dart's interest in another company, Crown Books Corporation ("Crown"), dates back to 1977. By June 29, 1984, Dart owned approximately 34% of Crown's outstanding shares.
 
 
 5
 Dart, Trak, and Crown shared a number of officers and always operated out of the same facilities in Landover, Maryland. There, the day-to-day operations of Crown and Trak were conducted by Dart in the same way that Dart managed the day-to-day operations of its drug store subsidiaries.
 
 
 6
 Beginning in 1972, and as reaffirmed in 1981, Dart had maintained an incentive stock option plan (the "Plan") for its employees. Pursuant to the Plan, certain employees of Dart's drug store subsidiaries, including plaintiffs, were granted options to purchase common stock in the parent corporation. The agreements provided that the options would vest over a four-year period and that holders of the options could exercise one-fourth of their options at each anniversary date of an option grant. Section 13 of the Plan accelerated the employees' rights to exercise options under certain circumstances. Section 13 stated in pertinent part that:
 
 
 7
 In the event the Company consolidates with, merges into, or transfers substantially all its assets or property to another corporation, or in the event any other corporation acquires control of the company in a reorganization ... or in the event of the Company's dissolution or liquidation other than pursuant to any plan of such reorganization, all outstanding Options shall thereupon terminate; provided, however, that the Company shall give at least 15 days' written notice to holders of unexercised Options prior to the effective date of such consolidation, merger, reorganization, dissolution or liquidation; and, unless such Options are assumed or substitutes therefor are issued ... by the surviving or acquiring corporation in any such consolidation, merger or other reorganization, all Options previously issued shall accelerate upon such notice, and the holders thereof may exercise such Options prior to such effective date, notwithstanding any time limitation previously placed on the exercise of such Options.... (emphasis added).
 
 
 8
 On June 29, 1984, Dart and its wholly-owned subsidiary, Dart Delaware Corporation, sold the stock of the drug store subsidiaries and related assets to Dart Drug Acquisition Corporation, pursuant to a written agreement. Under the agreement Dart retained certain assets, including its interest in Trak and Crown, cash and cash equivalents, commercial paper, bonds and investments, and inventory. Dart Acquisition paid Dart a total of $160,000,000, comprised of $140,000,000 in cash and a note for an additional $20,000,000, to complete the transaction. Following the sale of the drug store subsidiaries, 3,100 persons previously employed in the drug store operations became employees of Dart Drug Acquisition Corporation and ceased being employees of Dart.[2]
 
 
 9
 Subsequently, Dart constructed new headquarters for both its operations and those of Trak and Crown. Haft testified at trial that the sale of the drug store subsidiaries and the move to the new headquarters did not in any way change the relationship between Dart, Trak, and Crown.
 
 
 10
 After the sale, plaintiffs, relying on the acceleration provisions of Section 13 of the Plan, attempted to exercis% their options to purchase stock. When Dart denied their claims, plaintiffs instituted this action.
 
 
 11
 At trial, plaintiffs presented no economic evidence, but claimed that the sale of the drug store subsidiaries was a sale of "substantially all" of Dart's assets or property under Section 13 of the Plan. According to plaintiffs, all options had, therefore, accelerated and were exercisable at the time of the sale. Fath alleged that he had been denied profits of over $11,388 on options dating from December, 1981, to July, 1983. Kotlowski claimed that she was precluded from realizing over $13,234 in profits on options dating from July, 1982, to July, 1983.
 
 
 12
 Dart offered the testimony of W. Robert Grafton, a certified public accountant. Grafton, who qualified as an expert witness, presented five alternative methods for determining the value of Dart's assets.[3] Grafton concluded that, depending upon the approach to value used, Dart sold between 21.2% and 55.8% of its assets in the June 29, 1984, sale.
 
 
 13
 On the basis of the parties' stipulations and the evidence presented at trial, the district court found that Dart owned and operated Trak, Crown, and the drug store subsidiaries as of June 29, 1984. The district court further found that based on the evidence, including the expert economic testimony of Grafton, Dart did not sell substantially all of its assets or property on June 29, 1984, when it conveyed the drug store subsidiaries. Thus, the district court upheld Dart's refusal to accelerate plaintiffs' stock options pursuant to Section 13 of the Plan.
 
 
 14
 This appeal followed.
 
 II.
 
 15
 On appeal, plaintiffs contend that the district court's findings with respect to the sale of Dart's retail operations are clearly erroneous. Specifically, they argue that the district court erred in concluding that Dart operated Trak and Crown and that the latter companies were divisions of Dart. According to appellants, Trak and Crown were merely investments of Dart, and their individual assets or operations were not essential to Dart's operations. Appellants further argue that the district court erred in relying on a mathematical standard or percentage for its determination that substantially all of Dart's assets were not transferred. Finally, appellants contend that the trial court erred in failing to examine the purpose of the acceleration clause or the intention of the parties in executing the stock option agreements.
 
 
 16
 Upon consideration of the record, briefs, and oral argument, we are constrained to reject each of appellants' contentions as meritless. Our review of the record convinces us that the factual findings of the district court are not clearly erroneous and may not be disturbed by this Court on appeal. Anderson v. City of Bessemer City, --- U.S. ---, 105 S.Ct. 1504 (1985). The evidence clearly supports the trial court's findings that Dart owned significant interests in and operated both Trak and Crown as of June 29, 1984, the date the drug store subsidiaries were sold. In addition, the expert economic testimony of Grafton provides strong support for the trial court's conclusion that Dart did not sell substantially all of its assets. Despite the arguments advanced by plaintiffs in this appeal, the record reveals that they failed to object at trial to Grafton's testimony and failed to present any expert economic testimony of their own. They are thus precluded on appeal from challenging the trial court's reliance on Grafton's mathematical analysis for valuing Dart's assets.
 
 
 17
 Finally, it must be noted that the stock option agreements in this case were between the drug store employees and the parent corporation. We cannot say that the trial court erred in considering the total assets of the parent corporation when it determined that the acceleration provisions of Section 13 were not triggered. Nor do we find any ambiguities in the language of the Plan which would require the trial court to look beyond that language to extrinsic evidence of the purpose or intentions of the parties in executing the agreements. Grant v. Carotek, Inc., 737 F.2d 410, 412 (4th Cir.1984).
 
 III.
 
 18
 For the foregoing reasons, the judgment of the district court in favor of defendant Dart is affirmed.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 Judgment on the pleadings in favor of defendants Dart and Herbert H. Haft, chairman of Dart's Board of Directors, was entered on plaintiffs' additional claims for fraud and violations of federal securities laws. Only plaintiffs' claim for breach of contract against Dart proceeded to trial. Plaintiffs do not appeal the former order
 
 
 [2]
 Through this sale the Haft family gave up its controlling interest in the drug stores. The new corporation although similar in name to the previous organization, is owned by a different group of investors
 
 
 [3]
 The five methods employed by Grafton to determine the value of Dart's assets are as follows: total assets; proportionate share of total assets; net assets; proportionate share of net assets; and market value